1874.]    Tewksbury *et al. v.* Spruance *et al.*    187

Syllabus.    Statement of the case.    Opinion of the Court.

## William J. Tewksbury *et al.*
### *v.*
## Harmon Spruance *et al.*

Agency — *agent to purchase cannot be seller to himself.* An agent or broker employed to purchase for his principal cannot become the seller without notice to the principal. Therefore, a commission merchant employed to go upon the market and buy for another a given quantity of wheat for cash, is not authorized to turn over to his principal wheat held by him, even if he charges no more than the market price. His interest must not come in conflict with his duty.

Appeal from the Superior Court of Cook county ; the Hon. William A. Porter, Judge, presiding.

This was an action of assumpsit, brought by Harmon Spruance and Josiah W. Preston, partners, against William J. Tewksbury and Hugh Maher. The facts of the case are stated in the opinion of the court.

Messrs. Monroe, Bisbee & Gibbs, for the appellants.

Messrs. Hitchcock & Dupee, for appellees.

Mr. Justice Craig delivered the opinion of the Court:

On the 19th day of August, 1872, appellants ordered appellees, a commission house in Chicago, to purchase for them twenty-five thousand bushels of wheat; the wheat was purchased, and subsequently, under the order of appellants, sold, at a loss of seven thousand seven hundred dollars.

This action was instituted to recover the loss.

The defense relied upon by appellants is, that the appellees did not buy cash wheat, as directed, but purchased ten thousand bushels of cash wheat, and the other fifteen thousand bushels they procured on settlement.

The evidence shows that appellees, on receiving the order, purchased of W. N. Sturges five thousand bushels, and of B. F. Mully five thousand bushels. The fifteen thousand bushels

were obtained of W. E. Templeton, in the following manner: Appellees had sold Templeton a large quantity of wheat for future delivery, which they had on hand to be delivered to him. Upon receiving the order from appellants they went to Templeton and made a settlement with him and obtained a release from their contract as to the fifteen thousand bushels of wheat and turned it over to appellants, charging them the market price for the same.

In regard to the law involved in this case, there is no ground for dispute. An agent or broker employed to purchase for his principal cannot become the seller without notice to the principal. If appellees, as commission merchants, were employed by appellants to go upon the market and buy for them a certain quantity of wheat for cash, this would not authorize appellees to turn over to appellants wheat held by them, even if they charged no more than the market price, unless the fact was disclosed to the principals.

An agent is bound to act within the scope of his authority, and when he has a duty to discharge as agent, his own interest must not come in conflict with the duty he owes to his principal. *Mallet* v. *Robinson,* 5 Law Rep. Com. Pleas, 646.

The controverted question, however, in this case, is one of fact. It is insisted by appellees that the manner in which the wheat was purchased was expressly authorized by appellants. The testimony bearing upon this point is confined to the evidence of Preston on the part of appellees, and Tewksbury on the part of appellants, both of whom, so far as we can see from the record, are equally credible.

On direct examination Mr. Preston testified that on the 19th day of August Mr. Tewksbury came to him and ordered twenty-five thousand bushels of wheat purchased for August delivery. On his cross-examination he said, "He gave me authority to buy options where I could buy them in settlement. By buying in settlement, I mean buying back wheat that we had sold to other parties, and so settling the transaction, which would be the same as cash wheat to the party for

whom we were purchasing. Mr. Tewksbury's object was to have cash wheat, so that he could have possession of and deliver it at any moment, but he was willing we should buy where we could make settlements."

The witness further stated, on his cross-examination, that "Mr. Tewksbury gave orders that the wheat he bought should be either for cash or in settlement; he would then look to us, if bought in settlement, for the delivery of the wheat."

On the other hand, Mr. Tewksbury testified that: "Two or three days prior to the purchase, I had several conversations with Mr. Preston, and told him I desired to buy some cash wheat, and might do so at any time; that I would not buy any options (wheat for future delivery), as, in my opinion, there was a difference of thirty cents between cash and option, at the prices. Mr. Preston said that was the only thing to buy, and that if I would pay interest and insurance, he would rather have me do it; I agreed to do this."

He further stated: "I told him to buy cash wheat, and nothing else, and they reported to me twenty-five thousand bushels of cash wheat."

These two witnesses were the only persons who testify in regard to the terms of the contract, and their evidence is in direct conflict. It was, then, a question purely for the jury to determine what the real contract was between the parties. It was proper for the jury, in the determination of this vital question of fact, which would be the turning point in the case, to take into consideration the other facts and circumstances in evidence which might have a bearing upon the point, although remote.

It was shown that the fifteen thousand bushels of wheat acquired in settlement was actually in the possession of appellees, ready for delivery on the order of appellants; it was in fact, although not in name, cash wheat; this term does not signify wheat bought for cash, but it means wheat actually held ready for delivery, while option wheat may or may not be on hand; this term, as appeared from the evidence, is used to denote an

article to be delivered within a given time, at the election of the buyer or seller, as provided by the contract.

It did not appear that the wheat taken in settlement was charged to appellants at a higher rate than the market price when purchased for cash.

The whole of the wheat was sold by appellants; Tewksbury offered to pay one-half of the loss. All these facts were before the jury; they saw the two witnesses upon the stand, and they found by their verdict that the wheat was obtained in the manner required by the terms of the order of appellants, and where there is as much conflict in the evidence as is disclosed by this record, this court has uniformly refused to disturb the verdict of the jury. In regard to the question of the joint liability of appellants, we understand that point virtually abandoned, and hence it will not be considered.

The judgment of the Superior Court will be affirmed.

*Judgment affirmed.*