ESTATE OF ANDREW E. SMYTHE *et al.*

*v.*

CHARLES H. EVANS.

*Opinion filed April 20, 1904.*

1. CONTRACTS—*when contract is against public policy.* A contract
made by an agent of a corporation, under which the interests of
the agent are adverse to those of the corporation, is against pub-
lic policy, and cannot be enforced against the other party without
proof that the corporation, by its directors, either expressly con-
sented to the agent's act or expressly ratified it with full knowledge
of the material facts.

2. SAME—*ground on which courts refuse to enforce contracts against
public policy.* The refusal of courts to aid either party in enforcing
a contract against public policy or prohibited by law is not for the
preservation of the rights of either party, but for the maintenance
of the dignity of the court, the public good and laws of the State.

3. PARTNERSHIP—*what does not create a partnership.* An agree-
ment by a contractor to pay to an engineer, for his services in su-
perintending the work, one-half of the profits of the contract does
not create a partnership.

4. EVIDENCE—*what not evidence of payment on account.* Credit given by an administrator in a personal claim filed by himself against the estate, of a certain sum as paid by the deceased during his lifetime to the administrator on account, under the terms of the alleged contract on which the claim is based, is not of itself evidence, as against the heirs, either of the existence of the alleged contract or the fact of payment.

5. SAME—*when administrator's inventory, account current and orders of distribution are admissible.* Where an administrator fails to file his personal claim against the estate until orders of distribution to the heir-at-law have reduced the personal assets to less than the amount of his claim, the administrator's inventory, account current and the orders of distribution are admissible, the latter to be preceded by the petitions on which they are based or proper secondary proof of their contents.

6. SAME—*book-keeper cannot testify as to what the profits of a transaction were.* In determining from books of account what the profits of a particular transaction were, it is proper to take the evidence of a book-keeper to show the footings of columns of figures or the result of complicated calculations which cannot be readily carried in the minds of the jury; but the amount of the profits is a question for the jury, and not for the witness.

*Estate of Symthe* v. *Evans,* 108 Ill. App. 145, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. CHARLES G. NEELY, Judge, presiding.

Appellee, on September 21, 1899, filed his claim for $125,000 in the probate court of Cook county against the estate of Andrew E. Smythe, deceased. That court, after hearing the evidence, entered an order disallowing the claim. Evans appealed to the circuit court of Cook county, where the case was tried before a jury and a verdict was rendered in favor of appellee for $82,760.97. Motions for a new trial and in arrest of judgment were respectively overruled by the court and judgment was rendered upon the verdict. Appellants appealed to the Appellate Court for the First District, where the judgment of the circuit court was affirmed, and they now appeal to this court.

Charles H. Evans, the appellee, was the administrator of the estate of Andrew E. Smythe at the time this claim was filed in the probate court, and that court appointed John T. Richards to defend said estate against this claim.    Margaretta M. Smith is the sole heir and distributee of said estate, and joins in the appeal to this court.

The claim of appellee, on which he obtained judgment below, is for one-half of the profits realized by deceased under a contract for the construction of a gas plant in the city of Chicago for the Universal Gas Company of that city.    The contract was made on March 14, 1895, between the gas company and Smythe, and provided that the plant should be constructed under the supervision of Evans, appellee, as engineer, who should pass upon the sufficiency of the work done under the contract.  Smythe was to receive $1,177,000 for the work, which was to be completed by March 5, 1897, and payments were to be made from time to time upon the certificate of Evans, to the amount of eighty-five per cent of the value of the work done, fifteen per cent of the contract price to be withheld until the work was completed and accepted.

On October 14, 1895, Smythe assigned the contract for the construction of this gas plant to the Continental Contract Company, a corporation with a capital stock of $100,000, of which Smythe owned all but $200 of the stock.    Afterwards C. H. Randle acquired one-half of all the stock and Smythe continued the owner of one-half. Evans superintended the construction of the gas plant, inspected material, received and passed on the bids of sub-contractors and ordered payments by the Continental Contract Company to the sub-contractors as the work progressed, and contends that Smythe agreed to pay him one-half of the profits received by him, Smythe, from the construction of the gas plant for rendering these services, as Evans was an expert in the business of constructing plants of this character while Smythe was not

specially skilled in such work. The evidence also tends to prove that Smythe, or the Continental Contract Company, had a superintendent of construction by the name of Tibbets, whose duty it was to see that the work was properly constructed by the sub-contractors, and, in general, to perform for the Continental Contract Company the duties of superintendent. Appellants contend that any supervision exercised by the claimant was in his capacity as engineer for the gas company. According to appellee, the net profits to the Continental Contract Company from this work amounted to $451,043.90, of which Smythe, as owner of one-half the capital stock of the company, was entitled to $225,521.95, and Evans, in his claim filed below, gives Smythe credit for $30,000 paid to him on account.

Appellants offered no evidence except the inventory and report of appellee, as administrator, and two orders for partial distribution, entered by the probate court of Cook county in Smythe's estate, to all of which objections were sustained.

Appellants, both at the close of the evidence for the claimant and at the conclusion of all the evidence, asked the court to instruct the jury to find the issues for the estate, but the court refused to give such instructions.

Appellants deny the existence of any contract between appellee and Smythe, but aver that if one existed, as claimed by appellee, the same was contrary to public policy and void because inconsistent with the duties which appellee, in his capacity as engineer for the Universal Gas Company, owed to that corporation. Appellants also insist that there is no evidence showing that Smythe received any profits from the work; that the circuit court erred in refusing to give instructions numbered 7, 8, 9 and 10 offered by appellants and in giving instruction numbered 2 for appellee, and that the court erred in refusing to admit in evidence the inventory, report and orders for partial distribution, offered by appellants.

JOHN T. RICHARDS, for appellant the Estate of Smythe.

JESSE A. & HENRY R. BALDWIN, for appellant Margaretta M. Smith.

KRETZINGER, GALLAGHER & ROONEY, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

A contract for the erection of a gas plant was made between the Universal Gas Company, as party of the first part, and Andrew E. Smythe, as party of the second part, and provides that it is "to be built and constructed under the supervision of C. H. Evans, engineer, and in case of his death, removal or disability, then under such other engineer as may be designated by said party of the first part, which said engineer shall pass upon the sufficiency of the work done under said contract. The workmanship and material to be first-class in all respects, and the work to be done to the satisfaction and acceptance of the engineer in charge;" and one of the questions in the case is, did Evans act as engineer for the gas company, as contemplated by the parties to the foregoing contract at the time it was executed?

It appears from the testimony of Joseph Dawson, a civil engineer and draughtsman, that in 1895 and 1896 he was employed by the Universal Gas Company in preparing the detail plans for the erection of this plant; that Evans gave him instructions in reference to this work, and that Evans was engineer of the Universal Gas Company and in the employ of that company while the witness was there. The evidence, therefore, at least tends to show that Charles H. Evans, the claimant, was the engineer in charge of the work for the Universal Gas Company, whose duty it was to pass upon the sufficiency of the work done under the contract, and who had to be satisfied by Smythe that the workmanship and material were first-class in all respects. If, as he now contends, he was also in the employ of Smythe, the contractor, and

entitled to receive from Symthe one-half of the profits realized by the latter from the contract, then he was in a position where absolute loyalty to the interests of his employer, the Universal Gas Company, would bring him in conflict with his own interests as the employee of Smythe, because in the latter capacity it would advance his own interests to accept, as a compliance with the contract, workmanship and material of a cheaper grade than first-class, for the reason that Smythe's profits, and consequently his own compensation, would thereby be increased.

In the case of *Gilman, Clinton and Springfield Railroad Co.* v. *Kelly*, 77 Ill. 426, where a bill was filed by a stockholder in the railroad company charging that certain directors thereof had become stockholders in another corporation, the Morgan Improvement Company, and that the railroad company had made a contract for the construction of certain work with the improvement company under which work had been done, and asking that the contract be declared fraudulent in law and void, and requiring the directors who were stockholders of the improvement company to surrender to the railroad company the profits they had realized from the construction contract, this court held that the relief sought should be granted. It will be perceived that the case closely approaches the case at bar. Here the claimant was an agent of the corporation, as the evidence tends to show, while in the *Kelly case* the persons charged with improper conduct were directors of the corporation. It is not believed that this is an essential difference. One man can not serve two masters with reference to any matter where their interests are adverse, and it matters not, where one of those masters be a corporation, whether the servant be a director or agent. His duty to his master is none the less imperative.

In the case to which we have just referred we used this language (p. 434): "It may be added, the rule stands

on the obligation which a party owes to himself and his principal, that forbids him to assume a position which would ordinarily excite a conflict between his individual interest and a faithful discharge of his fiduciary duties. It operates to restrain all agents or trustees, public or private. The inquiry is not whether the contract the trustee has made is the best that could have been made for the *cestui que trust,* or whether it is fraudulent in fact. So strictly is this principle adhered to that no question is allowed to be raised as to fairness of the contract. The principle has a broader scope. The law has absolutely inhibited the agent or trustee from placing himself in a position where his own private interests would naturally tend to make him neglectful of his obligations to his principal, or where his position would afford him an opportunity to speculate in the trust property."

In *Aberdeen Railway Co.* v. *Blaikie,* 1 MacQueen, (H. L.) 461, it is said: "A corporate body can only act by agents, and it is, of course, the duty of those agents so to act as best to promote the interests of those corporations whose affairs they are conducting. Such agents have duties to discharge of a fiduciary nature towards their principal, and it is a rule of universal application that no one having such duties to discharge shall be allowed to enter into engagements in which he has or can have a personal interest conflicting, or which position may conflict, with the interests of those whom he is bound to protect." To the same effect are Story on Agency, sec. 211; *Higgins* v. *Lansingh,* 154 Ill. 301; *Young* v. *Trainor,* 158 id. 428; *Hafner* v. *Herron,* 165 id. 242; *Meyer* v. *Hanchett,* 43 Wis. 246; *Rice* v. *Davis,* 136 Pa. St. 439; *Bell* v. *McConnell,* 37 Ohio St. 396; *Lum* v. *McEwen,* 56 Minn. 278; *Farnsworth* v. *Hemmer,* 1 Allen, 494. These cases proceed upon the ground that such a contract made by the agent of one party to serve another with whom the first employer is dealing is contrary to public policy, where the interests of the employers which are involved are adverse.

Appellee suggests, however, that here the contract between the corporation and Smythe has been fully performed, and as the corporation has not in anywise interfered or objected to the existence or enforcement of the contract which it is claimed existed between Evans and Smythe, Smythe cannot interpose its illegality in a suit brought to compel him to divide the ill-gotten gains. Cases are cited from Georgia and California which seem to support this position. Counsel also refer to the case of *Brooks* v. *Martin*, 2 Wall. 70, which we think not in point. That was a case where a partnership had been formed for the purpose of buying from soldiers of the United States then returning from the Mexican war their claims for bounty land or scrip before the land warrants or scrip were issued by the government,—a traffic prohibited by statute. The suit was to compel a division of profits among the partners. It is to be observed that neither of the partners owed any obligation of a fiduciary character to the persons from whom the property was purchased and from which the profits were realized, and in that respect the case is distinguishable from this one.

The great weight of authority is that where a party comes into court seeking to enforce a contract which is against public policy or is prohibited by public law, the court will refuse to aid either party and will leave them where they have placed themselves, and in refusing to enforce such contracts the court does not act for the benefit, or for the preservation of the alleged rights, of either party, but in the maintenance of its own dignity, the public good and the laws of the State. *Wright* v. *Cudahy*, 168 Ill. 86; *Crichfield* v. *Bermudez Paving Co.* 174 id. 466; *Young* v. *Trainor, supra; Hafner* v. *Herron, supra; Meyer* v. *Hanchett, supra; Bell* v. *McConnell, supra; Lynch* v. *Fallon*, 11 R. I. 311; *Raisin* v. *Clark*, 41 Md. 158; *Oscanyan* v. *Winchester Repeating Arms Co.* 103 U. S. 261; *Findlay* v. *Pertz*, 66 Fed. Rep. 427; *Holman* v. *Johnson*, 1 Cowp. 341; *Lum* v. *McEwen, supra.*

Nor will the fact, if it be a fact, that both parties knew of the double employment enable Evans to recover. Before he can recover from Smythe it must appear from a preponderance of the evidence that the Universal Gas Company, acting through or by the authority of its board of directors, expressly agreed that he should enter into the contract with Smythe, or that, after the contract with Smythe had been made, the gas company was made aware of all the material facts, and then, through or by the authority of its board of directors, acquiesced and expressly ratified the act of its agent, Evans, in entering into that agreement. 1 Am. & Eng. Ency of Law, (2d ed.) p. 1113; *Gilman, Clinton and Springfield Railroad Co. v. Kelly, supra; Meyer v. Hanchett, supra; Rice v. Davis, supra; Raisin v. Clark, supra; Lynch v. Fallon, supra; Bollman v. Loomis,* 41 Conn. 581; *Capener v. Hogan,* 40 Ohio St. 203; *Everhart v. Searle,* 71 Pa. St. 256; *Bell v. McConnell, supra.*

The case of *Tewksbury v. Spruance,* 75 Ill. 187, to which we are referred by appellee, is not in conflict with this statement of the law. There agents were employed to purchase wheat, and it was held that they could not turn over to their principal wheat held by the agents, even if they charged no more than the market price, unless they disclosed the fact to the principal. If the fact was so disclosed and the principal accepted the wheat, of course there could be no ground of complaint.

It follows that instruction No. 2, given on the part of appellee, is wrong, in that it advises the jury that Evans may recover if the Universal Gas Company knew of the contract with Smythe, "and, with such knowledge, did not object." The law requires more than knowledge and a failure to object. It requires either approval of the contract at or before the time it was entered into with Smythe, or ratification of the act of the agent, with full knowledge of all material facts after it was entered into.

Appellants complain of the refusal of instructions numbered 7, 8, 9 and 10. The seventh is to the effect that there can be no recovery unless it appears, from the evidence, that Smythe received, as profits from said contract, some "certain, definite and fixed amount." We think this instruction was apt to mislead the jury by conveying to them the idea that there could be no recovery unless the evidence fixed the exact amount which Smythe received. If the claimant was entitled to recover, on his theory of the case he could recover one-half of whatever amount Smythe received, and to entitle him to recover it was not necessary the evidence should fix with absolute certainty the amount of profits received by Smythe; that is, if it were shown that Smythe received as profits some indefinite amount, which, however, was shown to be in excess of $100,000, then the claimant, if entitled to recover one-half thereof, would be entitled to recover $50,000, even though the evidence did not fix the exact amount of profits received by Smythe.

The eighth instruction proceeds on the theory that if the jury find, from the evidence, that there was a partnership between Evans and Smythe, then there can be no recovery in this suit unless there was a settlement of the partnership affairs in the lifetime of Smythe. There was nothing in the evidence on which to base this instruction. Claimant's contention was, that he was to be paid for his services one-half of Smythe's profits. This would not make them partners. *Burton* v. *Goodspeed*, 69 Ill. 237.

The latter part of the ninth instruction is, that "if you should find, from the evidence herein, that the claimant, Charles H. Evans, was the superintendent or engineer of the Universal Gas Company at the time of the performance or carrying out of the contract for the construction of a gas plant for the said company, and that the said Charles H. Evans was, by his agreement with the contractor for the said work, to receive a portion of the profits which said contractor was to receive or might

derive out of the said contract, then that the said law relating to public policy would bar the said Evans from recovering upon his said contract for the recovery of the said profits or any part or portion thereof, and that, in such case, your verdict must be for the estate of Andrew E. Smythe," and as quoted lays down the law correctly; but it was preceded by an abstract proposition of law, in the first part of the instruction, in reference to an agent placing himself in a position where his position would afford him an opportunity to speculate in trust property,—wholly inapplicable here,—and the instruction was therefore properly refused.

The tenth contained the same vice as the seventh.

As the case must be submitted to another jury, we deem it proper to pass on three questions arising in reference to the admissibility of evidence. Appellee argues, and it is stated in the opinion of the Appellate Court, that "Smythe paid Evans $30,000 on account, pursuant to the terms of their contract." Evans, in the statement of his claim filed in the probate court, gives credit for the sum of $30,000 paid him by Smythe in the lifetime of the latter. There is no other evidence of such a payment, and it is scarcely necessary to say that this is not evidence against appellants.

The appellants offered the inventory in the estate of Smythe, filed by Evans on December 7, 1897, and an account current made by the claimant as administrator of the estate of Smythe, filed in the probate court of Cook county on February 27, 1900, which showed disbursements prior to the filing of this claim which would reduce the available assets in the hands of the administrator, as we understand, to some amount between $55,000 and $60,000, which is less than the amount of this claim. They also offered in evidence certified copies of two orders of distribution in Smythe's estate, entered in the probate court, one on October 12, 1897, and the other on December 22, 1897, both of which recite that they are

made upon the petition of the administrator. The first directs the disbursement of $20,000 to the heir-at-law. The second orders the investment of $2000 and the distribution of $10,000 to the heir-at-law, the order for the distribution to the heir-at-law in each instance reciting that it be made provided that the sum specified be not necessary for the purposes of administration, and the report shows payments to the heir-at-law in excess of $20,000 prior to the time when appellee's claim was filed in the probate court. These transactions, unexplained, are inconsistent with the existence of a claim in favor of the administrator for $82,000. The natural thing for an administrator to do would be to keep in his hands sufficient funds to meet the known liabilities of the estate. The account current which was offered in evidence, and which appears in the transcript, shows that Evans entered upon the administration of this estate at least as early as October 12, 1897. He did not file his claim until September 21, 1899. He says by his counsel in this case, that the mere fact that he did not object "to the entry of two orders for payment to the heirs of sums that should have been retained to apply to his claim is not evidence against his claim," from which we understand there is no question but that it appears from the offered documents that he made such distribution to the heir-at-law that the assets in his hands were thereby reduced to an amount insufficient to meet his own claim if allowed.

In the case of *Johnson* v. *Gillett*, 52 Ill. 358, where an administrator asserted that he had paid and satisfied all the claims against the estate except a claim in his own favor, which he filed against the estate, and averred that he had, in the payment of such other claims, exhausted the personal estate, this court said (p. 361): "It is the acknowledged duty of all courts, when the claims of an administrator are preferred against an estate he represents, that all matters pertaining to it and to the administration of the estate should be closely scrutinized.

Such is the relation he bears to the estate, and to all the parties interested in it, that courts can hardly be too careful and scrutinizing, so that the true facts and the real condition of the estate and the acts and doings of the administrator can be readily seen and easily comprehended by those in interest."

We think the court should have received in evidence the inventory, the account current and the orders. The latter, however, should be preceded by the petitions upon which they were based, if such petitions are in existence, and if they are not in existence or cannot be found, then proof of their contents, if it is to be had, should be made before the admission of the orders.

Harry Flyton was book-keeper for the Continental Contract Company. The books of that corporation pertaining to the construction of this gas plant have never been closed, so as to show the amount of profits realized. Flyton made a statement from the books, and was permitted, over objection, to testify, after refreshing his memory from that statement, what the amount of the profits was. Appellants' brief does not present the matter so that we can understand precisely what was done in the court below. These books were competent evidence. It is also proper, for the convenience of the jury, to take the evidence of a book-keeper, accountant or other person skilled in work of that character, to show the footing of a column of figures or to show the result of any calculation from a complicated set of figures which cannot be readily carried in mind by the jury, where the calculation is purely mathematical. In making these figures from these books the only thing which it was proper to show by Flyton was the footings or other results obtained, in figures. His statement, based upon his examination of the books, that the profits were a certain sum, is a conclusion and inadmissible. It is for the jury to ascertain, from the evidence, what profits were received by Smythe, if any.

The judgments of the Appellate and circuit courts will be reversed and the cause remanded to the circuit court for further proceedings in conformity with the views herein expressed.          *Reversed and remanded.*