## A. H. Nilson Machine Company, Appellee, v. Kurtz Action Company, Appellant.

## Gen. No. 5,835.

1. CONTRACTS, § 157*—*right to enforce contracts against public policy and prohibited by law*. Where a party comes into court seeking to enforce a contract which is against public policy or is prohibited by public law, the court will refuse to aid either party and will leave them where they have placed themselves, and in refusing to enforce such contracts the court does not act for the benefit or for the preservation of the alleged rights of either party, but in the maintenance of its own dignity, the public good and the laws of the State.

2. SALES, § 329*—*when secret agreement to pay buyer's agent commissions established by the evidence*. In an action by one corporation against another to recover a balance due for goods ordered by an official of defendant corporation, a defense that there was an arrangement between such officer and an officer of the plaintiff corporation whereby the officer of defendant corporation received secret commissions on goods ordered and that such payments of money were a fraud upon defendant constituting a defense to the entire claim, *held* established by the evidence.

3. APPEAL AND ERROR, § 1241*—*when party cannot complain of refusal to give instructions*. Where a defendant offers two sets of instructions together he cannot complain of refusal of court to give one of the sets, where both sets could not be given and the choice made by the court was invited by defendant offering both sets of instructions together.

Appeal from the Circuit Court of Winnebago county; the Hon. ARTHUR H. FROST, Judge, presiding. Heard in this court at the October term, 1913. Reversed and remanded. Opinion filed May 6, 1914.

A. D. EARLY and R. K. WELSH, for appellant.

E. D. REYNOLDS, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

The A. H. Nilson Machine Company is a corporation organized under the laws of Connecticut and has its place of business in Bridgeport, in that State, and has been engaged for many years in the manufacture and sale of special machinery. Its chief stockholder and managing director is A. H. Nilson. The Kurtz Action Company is a corporation organized under the laws of the State of Illinois, has its place of business in Rockford, in Winnebago county, and for many years has been engaged in the manufacture and sale of piano actions. For many years prior to and at the time of the making of the contracts here sued on, Fred K. Kurtz was the secretary and manager of the Kurtz Action Company and had entire control of the activities of the Company until a few months previous to his discharge, which took place on May 20, 1910. In the course of its manufacturing business it became necessary for the Kurtz Company to have certain special machinery and it had purchased such machinery for many years from the Nilson Company, all of the business relating to those transactions being carried on between Nilson and Kurtz for their respective companies. These two men had been acquainted for about twenty years, and Kurtz frequently visited the establishment of the Nilson Company in Bridgeport. Early in the year 1910, the management of the Kurtz Company changed and a new manager, W. B. Thayer, was installed. At that time the balance claimed to be due from the Kurtz Company to the Nilson Company amounted to $2,368.05, and this sum the Kurtz Company, under its new management, refused or failed to pay. Suit therefore was accordingly brought by the Nilson Company in *assumpsit* and a declaration was filed containing the common counts, and also one count on a *quantum valebat*. There was a jury trial and a verdict for the plaintiff in the sum of $1,800. A motion for a new trial was overruled and plaintiff had judgment in that amount, from which defendant below appeals.

The evidence shows that Kurtz was in Bridgeport at the establishment of the appellee in March, 1909, and that either while there or upon his return to Rockford he gave an order in the name of appellant to Nilson, acting for appellee, for certain machinery, and that this suit is brought for the balance of the cost of that order. Appellant claims that it was arranged between Nilson and Kurtz that Kurtz should receive secret compensation or commissions from the appellee out of the moneys to be paid appellee by appellant for said order. The evidence shows, without contradiction, that various sums, aggregating in all $1,500, were paid to Kurtz by Nilson, and appellant claims that this alleged agreement and the payment of these sums of money was a fraud upon appellant and constitute a defense to the entire claim of appellee, or, at least, that appellant is entitled to a set-off in the sum of $1,500.

Appellee contends that Nilson paid these various sums of money to Kurtz as a reward for favors done by him to Nilson about twenty years before; that Kurtz had furnished Nilson with many ideas relative to his business which were of great value to him, and that he had desired to make some recompense to Kurtz for such assistance, but had never before that time been able to do so; and that shortly before the giving of this order Kurtz had come to him and claimed to be in need of financial assistance and he had agreed to give Kurtz $1,500, which he did in instalments and entirely without reference ot the business transaction between the two companies.

We are unable to accept the theory of appellee regarding the payment of this money by Nilson to Kurtz. If Nilson felt under obligations to Kurtz for past favors or assistance and felt that he ought to pay Kurtz the exact sum of $1,500, he would naturally have made it in one payment, if his financial condition would enable him to do so at that time. If not, he would naturally have given Kurtz his note or notes for

that amount, due at some later date or dates, when he felt confident that he would be able to make payment. Instead, the evidence shows that Nilson made payments to Kurtz as follows: $115 by check on July 20, 1908, which was before the order here sued upon, but shortly after a large payment by appellant to appellee upon a prior contract; $300 by check on April 3, 1909; $335 by note dated July 1, 1909, which was afterwards paid in full; $300 by note dated October 1, 1909, which was afterwards paid in full; $400 by note dated December 14, 1909, which was afterwards paid in full; and $50 by check, of which the date was not proved. We consider it highly significant that each of these checks or notes were drawn and delivered to Kurtz at the time or shortly after the Nilson Company had received a remittance on account from the Kurtz Company. If Kurtz was in Bridgeport he was paid at the same date that he made a payment for appellant to appellee, while if he was at Rockford he was paid as soon after a remittance to appellee as it could reasonably be received by mail. Nilson admits in his testimony that he never paid Kurtz any money until he was in the employ of appellant and that he made no payments to him after his discharge. The preponderance of the evidence also shows that the prices charged appellant for the machinery purchased by it were greatly in excess of its value, and while appellant never complained to appellee of the prices it was forced to pay and was apparently satisfied therewith, yet the fact remains that during that time Kurtz was in entire control of appellant and could buy machinery for appellant for any price he saw fit to pay. That these events so happened without any relation of cause and effect is contrary to human experience. *Ramsay's Estate v. Whitbeck*, 183 Ill. 550. We cannot agree with the claim of appellee that the purchase of the machinery was open and above board and in good faith, and that the jury has approved of the entire transaction by its verdict. The verdict

was not for the full amount claimed, nor did it include any interest, though the account was about three years in arrears. Appellee requested an instruction that the jury assess its damages at $2,683.05. The verdict was $883.05 short of that amount, and while we cannot know the reason for this deduction by the jury, yet it is a fair inference that it was made because the jury found fraud in the payment to Kurtz or because it believed appellant had been overcharged for the machinery purchased by it. The evidence by Nilson as to his reasons for wishing to pay Kurtz the sum of $1,500 is not convincing, and the entire transaction strongly savors of fraud. It seems to us from the clear preponderance of the evidence that this money was paid by Nilson to Kurtz in pursuance of an agreement and in consideration of certain orders for machinery from appellant, and that, as part of this agreement, the prices to be paid by appellant were raised to such an extent over the ordinary market price that Kurtz could be paid his commissions without actually reducing the profits of appellee. In other words, by this agreement, appellant itself furnished the money with which these commissions were paid to Kurtz. During all this time Kurtz was a salaried officer of appellant and had no authority to receive any such commissions. He owed to it the duty of devoting his time and efforts solely to its interest. We conclude that the conduct of appellee, in entering into such an arrangement with the representative of appellant, constituted a fraud upon appellant.

The courts of this and other States have always looked with much disfavor upon conduct such as is revealed in the clear preponderance of the testimony before us. Here, Kurtz was the employe and agent of appellant, and as such was under the paramount duty and obligation so to act as best to promote the interests of the corporation for which he was working and whose affairs he was conducting. Such an agent has a duty to discharge of a fiduciary nature towards

his principal, and it is a rule of universal application that no one having such duties to discharge shall be allowed to enter into engagements in which he has or can have a personal interest conflicting, or which position may conflict, with the interests of those whom he is bound to protect. See *Smythe's Estate v. Evans,* 209 Ill. 376, on page 382, and cases there cited. These cases proceed upon the ground that such a contract, made by the agent of one party to serve another with whom the first employer is dealing, is contrary to public policy, where the interests of the employers involved are adverse. The great weight of authority is that where a party comes into court seeking to enforce a contract which is against public policy or is prohibited by public law, the court will refuse to aid either party and will leave them where they have placed themselves, and in refusing to enforce such contracts the court does not act for the benefit or for the preservation of the alleged rights of either party, but in the maintenance of its own dignity, the public good and the laws of the State. *Smythe's Estate v. Evans, supra,* and many cases cited on page 383.

We are asked to reverse without remanding, but we are precluded from so doing by the state of the record. We assume that under the general issue, appellant could have the benefit of the defense that a contract tainted with such illegality cannot support any recovery. Appellant not only pleaded the general issue, but with it a notice that by a conspiracy between appellee and said Kurtz it was overcharged $2,236.82 for the machinery sued for, and that Kurtz was unlawfully paid a commission of ten per cent. upon the price of said machinery, amounting to $1,378.30, making a total of $3,615.12, and it offered to set-off that amount against appellant's demand, and averred it would ask a judgment against appellant for the difference between that sum and appellant's claim. Appellant asked instructions, which the court gave, to

the effect that if its said defense was established it was entitled to an offset for the amount of the compensation or commissions so paid by appellee to Kurtz, and other instructions, which the court refused, that under like circumstances appellee could recover nothing. If the latter instructions had been first offered and refused, appellant might have then offered the former without losing his right to assign error in refusing to instruct that there could be no recovery under the circumstances named in the latter instructions. But apparently appellant offered all these instructions together and gave the court a choice of instructions, and it cannot be heard to complain that the court adopted the theory it presented that the circumstances stated were a proper matter of set-off and refused those instructions based upon the theory that the illegality would prevent any recovery. The two sets of instructions could not both be given, for appellant could not have a set-off and also entirely defeat appellee's claim. The choice made by the court was invited by appellant. But under the theory which the court so selected, the recovery was for much too large an amount.

The judgment is therefore reversed and the cause is remanded.

*Reversed and remanded.*