450        APPELLATE COURTS OF ILLINOIS.

Farwell v. Pyle-National Elec. Headlight Co., 212 Ill. App. 450.

# Granger Farwell, Appellant, v. Pyle-National Electric Headlight Company, Appellee.

## Gen. No. 23,583.

1. CORPORATIONS, § 260*—*when purchase of license to manufacture patented articles given corporation is fraud on stockholders.* Where certain persons enter into a contract with a corporation whereby they are to receive, in consideration of a license to manufacture and sell patented articles, a certain per cent of the gross receipts of the articles made under the license, and such license is assigned to a stockholder and director of the corporation, who acquires it for the benefit of himself and another director, and a third director acquires a part of the interest of the second director, which directors own a majority of the stock and control the board of trustees, the purchase of such license contract by the director is a fraud upon the rights of the stockholders, especially where the corporation is financially able to make the purchase, and hence the contract may not be the subject of an accounting in a suit by the director originally making the purchase against the corporation.

2. CORPORATIONS, § 281*—*when burden of proof on director in suit against corporation for accounting.* The burden of proof, in an action for an accounting by a director of a corporation, as the assignee of a license contract between third persons and the corporation for the manufacture and sale of patented articles on a royalty basis, is on the director to show that his conduct towards the corporation was known to it, its officers and stockholders, and that his actions and dealings were in all respects fair and equitable.

3. CORPORATIONS, § 265*—*when corporation not estopped to claim violation of duty by director in taking assignment of license to manufacture goods from third persons.* Even though a corporation and its stockholders have for many years acquiesced in a contract for the manufacture and sale of licensed articles on the royalty basis, which was originally made by the corporation with third persons and was subsequently assigned by the latter to a director for the benefit of himself and another director and later held by such two directors and a third director, such directors constituting a majority of the board of directors, and holding a majority of the stock, and large sums of money were paid to such directors as royalties on the contract, neither the corporation nor the

---

*See **Illinois Notes Digest**, Vols. **XI** to **XV**, and **Cumulative Quarterly**, same topic and section number.

stockholders are guilty of any conduct which estops them from setting up as a defense in a suit against the corporation for an accounting, by the director originally taking the assignment, the violation of duty by such latter director.

Appeal from the Superior Court of Cook county; the Hon. MARTIN M. GRIDLEY, Judge, presiding. Heard in this court at the October term, 1917. Reversed and remanded with directions. Opinion filed November 11, 1918.

JONES, ADDINGTON, AMES & SEIBOLD, for appellant; KEENE H. ADDINGTON, W. CLYDE JONES, MORRIS ST. P. THOMAS, WALTER HAMILTON and ALBERT F. MECKLENBURGER, of counsel.

BUTZ, VON AMMON & JOHNSTON, MILLER, GORHAM & WALES, PARKER & CARTER and RECTOR, HIBBEN, DAVIS & MACAULEY, for appellee; FRANCIS LACKNER, FREDERIC E. VON AMMON, AMOS C. MILLER, EDWARD RECTOR, FRANCIS W. PARKER and DONALD M. CARTER, of counsel.

MR. PRESIDING JUSTICE DEVER delivered the opinion of the court.

By bill in chancery filed in the Superior Court of Cook county, Granger Farwell sought to compel the defendant, Pyle-National Electric Headlight Company, to account to him for certain moneys which it was alleged in the bill were due Farwell from defendant under a contract made by defendant on February 9, 1897, with George C. Pyle and Frank H. Ewers, whose interest therein passed by assignment to Farwell in June, 1899.

A decree was entered in the cause by the Circuit Court, which has been appealed to this court by complainant, and defendant has assigned cross errors. The defendant, Pyle-National Electric Headlight Company, was organized in the year 1897, shortly before it entered into the contract with Pyle and Ewers. Under the contract defendant acquired an exclusive license to manufacture and sell articles covered by seven

patents owned by Pyle and Ewers, for which license defendant agreed to pay 5 per cent of the gross receipts from the sale of all articles made under the license. The complainant, Farwell, acquired a stock interest in the company in the year 1898, which he retained up to the time of the bringing of this suit. He became a director of the company in the early part of the year 1899, and remained such for a period of about 13 years. In June, 1899, he purchased the interest of Pyle and Ewers in the license contract for the benefit of himself and Royal C. Vilas, Sr., who was at the time president and also a director of defendant. While there is some conflict in the record, the evidence satisfactorily shows that Farwell paid Pyle and Ewers for the rights granted under the royalty contract a sum slightly less than $8,000, and that defendant company paid not less than $3,000 royalties under the contract in the year following. The evidence further tends to prove that beginning in the year 1899 and up to the time of the filing of the bill, May 13, 1914, the defendant company has paid to Farwell, Vilas and Perry Trumbull, who had acquired a part of Vilas' interest. in the contract, and the heirs of the latter two, an aggregate sum of more than $145,000. In his bill Farwell seeks to recover of defendant a further sum of $300,000 on the theory mainly that he has been underpaid for royalties due him under the license contract. Farwell's interest in the corporation was acquired as the result of a gift to him by Royal C. Vilas, Sr., the then president of defendant, of 10 shares of the capital stock of defendant, and a few months following this transaction Farwell took over the interest of Pyle and Ewers in the contract for the benefit of himself and Vilas, who together with Trumbull constituted, for some time thereafter, a majority of the board of directors of defendant. At the date of the assignment of the license contract to Farwell, he, Royal C. Vilas, Sr., and Perry Trumbull were in control of defendant.

Vilas owned a majority of its capital stock and was its president and treasurer; Trumbull was its secretary, vice president and attorney. Within 2 years from the date of the assignment of the contract to Farwell, he and his colleagues were paid by the corporation a sum in excess of their investment in the contract. Excepting a period of 3 months, Farwell continued to act as director of the corporation from the 11th day of January, 1899, to January 10, 1912. Farwell, Vilas and Trumbull formed a majority of the board of directors of the corporation until February 6, 1901, when the board was increased from five to seven members. All of the powers of this board of directors were, by act of the board, bestowed upon Farwell and Vilas, as an executive committee; an additional member was added to the committee in 1903.

The issues involved were referred by the court to a master in chancery to hear the evidence and report the same to the court with his conclusions on the law and the evidence. Much evidence was heard by the master and he filed his report in the trial court. Later the court reopened the cause for rehearing and additional evidence was submitted to the court without reference. A decree was finally entered in the cause, which is before us in this proceeding for review.

The briefs of counsel present several interesting and difficult questions. It will not be necessary, however, to consider more than one of these questions. Counsel for defendant insist that the complainant Farwell, by accepting an assignment of the license contract in question, placed himself in a position where his rights and privileges under the contract seriously interfered with his duty to defendant as a director thereof; that he should be denied the relief he seeks in that he occupied towards the defendant the position of a fiduciary, and that under the circumstances of the case he was prohibited from acquiring any interest that might tend to deprive defendant of the benefit of his undivided

454. APPELLATE COURTS OF ILLINOIS.

Farwell v. Pyle-National Elec. Headlight Co., 212 Ill. App. 450.

skill and loyalty. We are inclined to agree with this contention. By the purchase of the royalty contract Farwell and Vilas became the owners of a one-half interest each therein. In June, 1899, Vilas owned a majority of the capital stock and was in control of defendant's business.

The license contract was capitalized in 1899 by the defendant corporation at the sum of $699,550. At this time it owed the sum of $4,500 for royalties under the contract which had become the property of Farwell and Vilas and in which Trumbull later took an interest. It is asserted by counsel for complainant that at this time the corporation was insolvent; that this fact was evidenced in part by the failure to pay royalties as they became due to Pyle and Ewers, and that Farwell, through his friendship with Vilas, had acquired the contract to prevent the corporation from losing its rights thereunder. It is insisted that Pyle and Ewers had the right under their contract, in the event of any default in payments due under it, to declare the contract relationship between them and the defendant at an end. While there is some evidence in support of the assertion that the defendant was in some financial straits in 1899, we are inclined to the view on the whole evidence that it was not by any means insolvent. The theory of complainant is that he took over the contract for the purpose of protecting the business and the existence of the defendant, but the evidence shows that at the time of the purchase of the contract the corporation had net assets over and above all debts and obligations of about $27,000, and that it had more than enough cash and accounts receivable to pay its then existing indebtedness.

The evidence further tends to prove that the defendant in the year 1899, out of the business conducted by it, acquired a profit of at least 3 per cent on its total capitalization, which included the large sum at which the license contract was capitalized. It does not ap-

pear from the record before us that all the stockholders of defendant had notice of the purchase of the contract by Farwell and Vilas, or that defendant or its stockholders ever ratified or approved this purchase.

*Gilman, C. & S. R. Co. v. Kelly,* 77 Ill. 426, and *Pearson v. Concord R. Co.,* 62 N. H. 537, are both leading cases upon the question of what duties and obligations are imposed by law upon directors who assume to enter into contracts with their corporations.

In the *Gilman* case, *supra,* the president and two directors of the railway company became stockholders in the Morgan Improvement Company, which at that time had a contract with the railway company for the construction of a railroad. The contract was approved by the directors of the railway company. The stockholders of the railway company filed a bill to set aside this contract and for an accounting, and the court found in its decree that the contract was fraudulent in law, and ordered such accounting. On page 431 the court said:

"On the theory, however, the contract with the Morgan Improvement Company was illegal, as being interdicted by a sound public policy, complainants are entitled to have an account taken of profits, if any were realized, against the participating directors. * * * The court did not, by its decree, find there was any fraud, in fact, in the making of the construction contract with the Morgan Improvement Company. Indeed, the evidence will not justify any such finding. * * * There can be no doubt, the contract * * * was entered into with the utmost good faith. No fraud, in fact, existed, nor was any contemplated by the directors of the railroad company."

In *Klein v. Independent Brewing Ass'n,* 231 Ill. 594, the court, referring to the *Gilman* case, *supra,* said:

"The rule was announced that the directors of a corporation were to be regarded as trustees for the stockholders, and that it was unlawful for them to act in opposition to the interest of the stockholders or place

themselves in a position where their individual interest would interfere with their acting for the best interest of all the stockholders.   *   *   *   The rule, in its general sense, embraces every relation in which there may, by any possibility, arise a conflict between the duty to the person with whom the trustee is dealing or on whose account he is acting, and his own individual interest.''

The case of *Pearson v. Concord R. Co.*, 62 N. H. 537, is a leading case on the question under consideration. In that case a bill was filed by a stockholder in the Concord Railroad Company on behalf of himself and other stockholders against the Concord Railroad Company, its directors and other railroad companies (referred to in the decision as the ''upper companies''). A majority of the directors of the Concord Company constituted a majority of the directors of the upper companies. The court held that the stock ownership of the Northern Company, one of the two upper companies, in the Concord Company was illegal; that

''A director of a railroad corporation, though not technically a trustee, stands in a fiduciary relation to the corporation, and is under the disability of a trustee. Practically, the directors are trustees, and the stockholders are the *cestuis que trust*. Like all other persons where this relation exists, he cannot, as buyer for his corporation, buy of himself against the objection of his *cestui que trust,* nor as seller for the corporation become the purchaser, nor, being its agent and trustee, contract with himself.''

In *Higgins v. Lansingh*, 154 Ill. 301, which is also a ''director's'' case, the court quoted from Morawetz, p. 365, as follows:

''It is immaterial whether the transaction was fair or not.   *   *   *   In many cases it would be impossible to ascertain whether the agent did or did not obtain the best terms for the principal which it was possible to obtain.''

The evidence in the case shows that a majority of

the board of directors and of the executive committee of the defendant corporation, for a considerable period of time, were the owners of the license contract; that during this time they acquired from the defendant corporation large profits upon their investment in the contract, and that their dual and conflicting relationship to defendant extended over a period of years. In fact it is evident that royalties were paid to Farwell, Vilas and Trumbull, and the heirs of the latter two, on a construction of the license contract under which royalties were paid upon complete electric locomotive headlights, in the manufacture of which were included the devices covered by the several patents referred to in the license contract, and it is insisted by Farwell that the corporation is now bound by this construction of the contract. Counsel for defendant assert that this construction of the contract was not authorized by the language of the instrument, but was in fact the result of the control exercised by Farwell, Vilas and Trumbull over the affairs of the defendant, and that as a result of their control of the board of directors and of its executive committee they had paid to themselves considerable sums of money which were not equitably due under the terms of the contract. It is not necessary to determine at this time whether defendant's counsel are right in their contention. The wisdom and value, however, of the rule of law which forbids a majority of a board of directors to deal in their own interest with their corporation clearly appears from the controversy between the parties to this litigation.

Whether the owners of the license contract in question were entitled to the large payments made them was, as shown by the briefs of counsel, a very difficult and important question which directly concerned the interest of all of the stockholders of defendant. Under the circumstances of the case, it is not surprising that this question was resolved in favor of the complainant and his colleagues.

The record before us discloses that Farwell continued to receive his share of payments made under the license contract until about the year 1912, at which time Royal C. Vilas, Jr., who with other members of his family had succeeded to the ownership of the stock formerly owned by Royal C. Vilas, Sr., caused the defendant to manufacture certain articles which were intended to be used in headlights in substitution of those which had been manufactured by defendant under the patents referred to in the license contract. When this practice began, a conflict of interests at once appeared between Farwell and the persons who succeeded to the interest of Royal C. Vilas and Perry Trumbull under the contract. It is obvious that the persons in interest with Farwell in the license contract, and who owned and controlled a majority of the capital stock of defendant, found it, for some reason, more profitable to cease the manufacture of articles and devices authorized by the license contract. Had Farwell and the other directors and officers of the defendant been regardful of their duty to defendant from the beginning, no such conflict of interests would have or could have occurred.

In the *Gilman* case, *supra,* the Supreme Court said:

"That no director could rightfully become a member of the improvement company, with whom the railroad company had a contract to furnish the means with which to build the road, with a view to share in the profits, and that if any gains should be realized in the enterprise, they would belong to the railroad company, upon the equitable principle which forbids the trustee, or person acting in a fiduciary capacity, from speculating out of the subject of the trust."

We think it fairly appears from the whole record that the purchase of the license contract by Farwell was a fraud in law of the rights of the corporation; that it was plainly evident at the time this contract was acquired that the assignment should have been made in the interest of and for the benefit of defendant, and

there is ample evidence in support of the claim that the corporation was financially able to acquire the rights under the contract which were purchased by Farwell and Vilas. It is fairly inferable from the evidence in the case that the highly profitable interest which Farwell and Vilas acquired was due to the knowledge obtained by them as a result of their connection with defendant, and under the authorities Farwell will not be permitted to receive further profits as a consequence of his violation of his fiduciary obligations to it.

Under the peculiar facts of the case there could have been no ratification of or acquiescence in the conduct of complainant in acquiring the royalty contract. In the *Gilman* case, *supra*, it was attempted to show that the corporation had ratified the conduct of a director who, in violation of a fiduciary obligation, had entered into relations in conflict with his duty to the corporation, and it was insisted in that case that this conduct was ratified at a stockholders' meeting. In passing on the point the Supreme Court said:

"Whatever was done at that meeting was not done with a full knowledge of all the facts. It was not then known the president and two of the directors would become members of the Morgan Improvement Company, with whom the contract had been concluded. Had this important fact been known, it might have changed the conclusion of the stockholders."

The evidence here does not disclose that all of the stockholders of defendant knew of the relationship which actually existed between certain of its directors, and the corporation. Dealing as we are with the conduct of one who occupies a fiduciary relationship, it must be held that burden of proof rests upon him to show that his conduct towards the corporation was known to it, its officers and stockholders, and that his actions and dealings with the corporation were in all particulars fair and equitable.

In *Voorhees v. Campbell*, 275 Ill. 325, the Supreme Court said:

"It is insisted, however, that the cause of action is barred by the laches of plaintiff in error. Where a cause of action arises from fraud, laches will not apply in equity until the discovery of the fraud or until the fraud could have been discovered by the exercise of reasonable diligence. The failure to use diligence is excused where there is a relation of trust and confidence which renders it the duty of the party committing the fraud to disclose the truth to the other. (*Farwell v. Great Western Tel. Co.*, 161 Ill. 522; *Penn v. Fogler*, 182 Ill. 76.) There being here a relation of trust and confidence, the duty to exercise reasonable diligence to discover the fraud did not rest upon the plaintiff in error, and it does not appear that he was in possession of all the facts relative to the fraud which had been practiced upon him until the institution of this suit."

The record before us is far from showing that complainant's conduct was either fair to the stockholders of defendant or that it was known to all of them. It is true that the contract which he seeks to enforce against the defendant was in the first instance made with persons who were qualified to deal with the corporation, but we can see no essential difference between the circumstances of the instant case and those cases where direct dealings between directors and their corporations have been condemned. *Gilman, C. & S. R. Co. v. Kelly, supra; Charter Gas Engine Co. v. Charter*, 47 Ill. App. 36.

It should be kept in mind that we are considering here a relationship which is continuing in its nature. Whether there be force or not in the suggestion that the defendant corporation and its stockholders have for many years acquiesced in the contract in question and the payments which have been made to Farwell and his colleagues, it does not follow as a consequence of this that the corporation itself is bound to continue a relationship which is essentially unfair to its stockholders. The wrong in its nature is continuing, and

while the record shows that the defendant, because of the control of its affairs by Farwell and Vilas, has paid out large sums of money which might have been saved to its stockholders, there is no equitable reason why this conduct should be continued. In *George v. Central Railroad & Banking Co.,* 101 Ala. 607, the court said:

"The abuses committed in the past are the very grounds and causes of their present interposition, to the end that future similar abuses may be prevented. The use of the stock is continuing, and we can conceive of no just reason why a party interested, and otherwise entitled to interfere, may not interfere, at any period of such use, and object to its continuance. As well might it be said that a person who has for a long time suffered, without objection, continued trespasses upon his property, is obliged, by reason of his silence, to submit to all future trespasses which the wrongdoer may be disposed to commit."

*Klein v. Independent Brewing Ass'n,* 231 Ill. 594.

There is no merit in the contention that the defendant corporation, under the circumstances of the case, was called upon to sever the relationship which was established by the unlawful conduct of its directors. This question has been elaborately argued by counsel for complainant, and while some of the cases relied upon support their argument, we are of opinion that the evidence does not show that the defendant or its stockholders were guilty of any conduct which now estops them from setting up Farwell's violation of his duty as a director as a defense.

In *Dunbar v. American Telephone & Telegraph Co.,* 238 Ill. 491, the Supreme Court said:

"A court of equity may, in furtherance of justice and of a sound public policy, aid the one who is comparatively the more innocent, and may grant him full affirmative relief by canceling an executory contract, by setting aside an executed contract, conveyance or transfer, by recovering back money paid or property de-

livered, as the circumstances of the case shall require, and sometimes even by sustaining a suit brought to enforce the contract itself."

The trial court did not err in granting leave to defendant to amend its answer after the hearing had before the master. While the question under consideration does not appear to have been raised before the master, it became a question for decision by the chancellor at the time the decree was entered. It is not necessary, nor is it proper, that we discuss other questions raised, as in view of what has been said the decree of the Superior Court must be reversed and the cause remanded with directions to dismiss complainant's bill for want of equity.

*Reversed and remanded with directions.*