FRANK NOWAK et al. Appellants, vs. THE NATIONAL CAR
COUPLER COMPANY et al. Appellees.

*Opinion filed October 28, 1913—Rehearing denied Dec. 5, 1913.*

1. FREEHOLD—*a freehold may be involved though land lies in
another State.* A freehold is involved on appeal from an order
dismissing, for want of equity, an original bill to enjoin a sale of
real estate and a supplemental bill asking to have the sale set
aside, even though the land in question lies in another State, where
the lower court had jurisdiction of the persons who made the sale
and executed the conveyances and power to compel them to re-
store the status as of the time the original bill was filed.

2. EQUITY—*general rule where a sale is sought to be set aside
for inadequacy of price.* Where a public sale of property is sought
to be set aside in equity upon the ground of inadequacy of price,
it is a general rule that there should be an offer of some person
to purchase the property at an advanced price or some assurance
that a better price will be obtained upon another sale.

3. SAME—*what does not show that sale price was inadequate.*
The mere fact that a new corporation, having the same officers
and directors as an old corporation whose charter has expired, of-
fers to take the property of the old corporation at a figure rep-
resenting substantially the par value of the outstanding stock of
the old corporation, payment to be made by exchanging the stock
of the new corporation for that of the old, does not show that its
subsequent cash bid, amounting to about one-third of the par value
of the stock, the purchaser to assume the debts of the old corpo-
ration, was inadequate.

4. CORPORATIONS—*a director is not disabled from buying prop-
erty of corporation.* A director of a solvent corporation which is
about to wind up its affairs because its charter has expired is not
disabled from purchasing the property for himself or for a new
corporation which has been organized, provided he acts with the
utmost fairness, so that the property shall bring its full value.
(*Chicago Hansom Cab Co.* v. *Yerkes,* 141 Ill. 320, explained.)

5. SAME—*rule in selling property of corporation which has no
fixed market value.* If the property of a corporation which is
about to be sold in order to wind up the affairs of the corporation
has no fixed market value, the proper method of ascertaining its
value is to offer it at a well advertised public sale.

6. SAME—*minority stockholders cannot dictate price at which
property of corporation shall be sold.* While minority stockhold-
ers in a corporation which is winding up its affairs are not obliged

to give their consent to the plans of the majority for disposing of the property of the corporation, which has no fixed market value, yet they have no right to fix a valuation of such property themselves and compel the other stockholders to take it at that price and give them cash for their stock based on such valuation.

APPEAL from the Superior Court of Cook county; the Hon. WILLIAM E. DEVER, Judge, presiding.

CHAUNCEY M. MILLAR, for appellants.

C. R. MILFORD, and O'SHAUGHNESSY & O'SHAUGHNESSY, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellants, Frank Nowak and Charles A. Nowak, were stockholders of the National Car Coupler Company, a corporation of this State organized under the act concerning corporations, in force July 1, 1872. (Laws of 1871-72, p. 296.) The charter expired on May 2, 1912, but by section 10 of the act the corporate capacity was continued during the term of two years, for the purpose, only, of collecting the debts due the corporation and selling and conveying its property and effects. On December 24, 1912, the appellants filed their bill of complaint in the superior court of Cook county against the corporation and officers and directors thereof, asking the court to wind up the corporation, to enjoin a contemplated sale of its real estate and other property and its good will and business, and, if a new corporation of the same name which had been organized should succeed to or acquire the property, to determine the value thereof and to distribute the proceeds among the stockholders in proportion to their stock. A preliminary injunction was denied and the sale took place. H. L. Bailey, a director of the corporation, became the purchaser and transferred his rights to the new corporation. The appel-

lants then filed a supplemental bill alleging these facts and praying the court to set aside the sale and conveyances of the property which had been made, and repeating the prayer that the court would wind up the corporation and dispose of its property by a sale of its assets, good will and business for cash, and would distribute the surplus, after the payment of debts, among the stockholders. The supplemental bill added the new corporation as an additional defendant. The court sustained a demurrer to the original bill and supplemental bill as amended, and the appellants having elected to stand by said bills, they were dismissed for want of equity.

The corporation owned real estate in the city of Attica and town of Converse, in the State of Indiana. The original bill was filed in the superior court of Cook county, in which county the principal office of the corporation was, to enjoin the corporation and its officers from making the intended sale. An injunction was refused and the sale was made, but the court had acquired jurisdiction of the persons who made it and executed conveyances under it, and had power to compel them to restore the status as of the time when the bill was filed. Having acquired jurisdiction the court could set aside the sale and conveyances, which involved the freehold, and it was not material that the real estate was located in the State of Indiana. (*White Star Mining Co.* v. *Hultberg,* 220 Ill. 578.) If the court had set aside the sale and conveyances it could have enforced its decree, and this court has jurisdiction of the appeal.

The material facts alleged in the original and supplemental bills and admitted by the demurrer are as follows: The corporation was organized to manufacture and sell car couplers and railway appliances and to do general foundry work, with its principal office in Chicago and its plant at Attica, Indiana. The capital stock was in 3000 shares of the par value of $100 each, of which 2790 shares were issued, and the appellants were the owners of 172 of the

shares.   J. W. Harrison was president and general man-
ager and owned the majority of all the shares.   At the
expiration of the charter the corporation was a solvent and
going concern.   On March 14, 1912, notice was sent to the
stockholders of a meeting to be held in Chicago on March
28, 1912, to take action for the winding up and closing of
the business and disposing of the property of the corpora-
tion.   On March 16, 1912, Harrison addressed a letter to
each stockholder advising the organization of a new corpo-
ration of the same name under the laws of Indiana, which
were said to be more liberal toward corporations than those
of this State.   His proposal was that the new corporation
should take the property on a plan for an exchange of stock
in the new corporation, to be distributed *pro rata* among
the stockholders.   At the stockholders' meeting the appel-
lant Charles A. Nowak, acting for himself and the appel-
lant Frank Nowak, dissented from the proposition and it
was not adopted, and on that day a notice signed by the
directors was sent to each stockholder for a meeting to be
held on April 29, 1912, to determine whether the corpora-
tion should seek an extension of the existing charter.   Har-
rison addressed another letter to each stockholder again
urging the organization of the new corporation under the
laws of Indiana, which should take the property for the
existing stockholders by an exchange of stock.   At the
meeting of April 29, 1912, it was determined to apply for
an extension of the charter for a period of seventy-nine
years.   There were two days intervening before the expira-
tion of the charter, and the certificate of the proceedings
did not reach the Secretary of State before May 2, 1912,
when the Secretary refused to receive the application.   On
June 3, 1912, a proposal to form a corporation, to be called
"The National Car Coupler Company," (which was the
name of the old corporation,) was filed in the office of the
Secretary of State by persons acting in the interests of the
old corporation, and a new corporation was organized.   On

October 10, 1912, Harrison addressed another letter to the stockholders proposing a re-organization under the new corporation, each stockholder to have the same number of shares of stock as in the old company, the subscriptions being merely an exchange of shares. On November 20, 1912, a notice was addressed to the stockholders for a meeting to be held on December 3, 1912, to consider and take appropriate steps concerning the action of the directors and ordering and directing a sale of the property at public sale in order to wind up the affairs of the corporation. On December 3, 1912, a meeting of the stockholders of the old corporation was held and a resolution was passed reciting the necessity of effecting a re-organization in order that the property might be kept together and the business as previously conducted by the corporation be preserved and continued for the benefit of the stockholders; that a new corporation had been organized for that purpose and had made a proposition to purchase the property, good will and business of the old corporation and to pay therefor $278,966.66 in capital stock of the new company, to be distributed *pro rata* among the stockholders of the old corporation, and accepting the proposition. The stockholders present voted for the resolution, but it was announced that the law required the consent of every stockholder to make the resolution legal, and therefore it was necessarily lost. Thereupon a resolution was passed describing at length the real estate and other property of the corporation and directing the board of directors to sell and dispose of it at public sale to the highest bidder for cash, after giving notice of the sale in newspapers of general circulation in the city of Marion and city of Attica, Indiana, and the city of Chicago. The directors met the same day and made an order for the sale and the publishing of notices according to the resolution of the stockholders. Notices were given and the property in the city of Attica was offered for sale in that place and the other real estate was offered at the city of Marion, but no

bid was received at either place, and the sales were ad-
journed to the office of the corporation in Chicago, where
all the property, good will and business were offered, and
H. L. Bailey bought the property for $90,000 cash, subject
to all debts, which he was to pay.  The appellant Charles
A. Nowak, with his solicitor and witnesses, attended the
sale.  Bailey assigned his purchase to the new corporation
and conveyances were made, which the supplemental bill
asked to have set aside.  The corporation had $12,300 cash,
which, with the purchase price of $90,000, amounted to
$36.81 on each share of the stock.  The supplemental bill
charged that the sale was insufficiently advertised and that
Bailey was disqualified to purchase because he was vice-
president and a director of the corporation.

The sale was advertised, in accordance with the resolu-
tion of the stockholders, for three successive weeks in news-
papers in Indiana, where the real estate and plant were
situated, and a newspaper in Chicago which had a general
circulation among real estate dealers.  It cannot be said
that the advertising was not sufficient.  It was alleged that
the property was worth much more than the amount for
which it sold, and there had been an offer by the new cor-
poration to take it at the price above stated, but the pur-
chase price was not to be paid in cash.  The amount was
substantially the amount of outstanding stock and the price
was payable in stock of the new corporation, to be ex-
changed with the stockholders of the old corporation.  That
plan was rejected by the appellants and it is evident that
the property had no market value.  There was no showing
that any person who would have bid for the property was
ignorant of the sale or that the best price was not obtained
because of the time, place or manner of the sale.  The bill
did not allege that anyone had made an offer in excess of
the amount for which the property was sold, or that the
appellants had any knowledge of any person, firm or cor-
poration who would bid any greater sum, payable in cash.

As a general rule, the proper method of ascertaining the value of property which has no market value is to offer it at a properly advertised public sale, and it is also a general rule that upon an application to have a sale set aside on account of inadequacy of price there should be an offer of some person to purchase the property at an advanced price or some assurance that a better price would be obtained upon another sale. It is not strange that the new corporation was willing to pay a much higher price under a plan which was a mere exchange of stock. The new corporation had the same officers as the old one, and they had been in charge of the business and knew both the business and the trade, so that the business would continue without interruption. The appellants had no right to require the other stockholders to take the property at a valuation fixed by them or by the court and to give them cash for their stock based on such valuation, and there was nothing in the bill from which the court could say that any outsider would give more than the price obtained.

The principal reason urged in argument for the appellants for setting aside the sale is that Bailey, as a director of the corporation, was disqualified to purchase its property. The question whether an officer or director of a corporation can deal with it, and if so, to what extent and under what conditions, has been before this court a number of times, and the general rule to be derived from the decisions is, that a director of a solvent corporation may trade with, borrow money from or loan money to the corporation or purchase its property, but in doing so he must act fairly and be free from all fraud and oppression and must impose no unfair or unreasonable terms. While a director is not disabled from purchasing the property of his corporation, the transaction will be subjected to the closest scrutiny by a court of equity, and if it was not conducted with the utmost fairness, to the end that the full value of the property should be obtained, the court will set it aside. (*Merrick*

v. *Peru Coal Co.* 61 Ill. 472; *Harts* v. *Brown,* 77 id. 226; *Beach* v. *Miller,* 130 id. 162; *Higgins* v. *Lansingh,* 154 id. 301.)   In *Beach* v. *Miller, supra,* where the court held the weight of authority to be that a director may deal with his corporation, the court quoted from *Twin Lick Oil Co.* v. *Marbury,* 91 U. S. 587, to the effect that his obligation, if he becomes a party to a contract with the company, to candor and fair dealing is increased in the precise degree that his representative character has given him power and control, derived from the confidence reposed in him by the stockholders who appointed him their agent.   In *Chicago Hansom Cab Co.* v. *Yerkes,* 141 Ill. 320, there were statements as to the disqualification of Charles E. Needham, the secretary, which were correct as applied to that case but went beyond the general rule.   The stockholders had appointed Albert B. Pullman, president, and Charles E. Needham, secretary of the corporation, a committee to mortgage or sell the property of the corporation, at their discretion. Needham had previously made a secret agreement with Warren Springer to purchase the property and it was sold by the committee at private sale to Springer and Needham. There was a fraudulent intent on the part of Needham to secure for himself and Springer the property of the corporation at private sale at a price fixed by themselves.   Needham had disqualified himself by his previous secret contract with Springer, and the court held that no action of the stockholders could purge the transaction of the fraud.   Considering the sale made in this case, we agree with the superior court that there was neither actual fraud shown on the part of Bailey, any undue advantage taken by him, or anything to show that the sale was not conducted by Harrison with perfect fairness, for the purpose of obtaining the best possible price.   Harrison, Bailey and the other stockholders appear to have acted in good faith in the various proposals for the re-organization of the corporation and the preservation of the rights of all the stockholders in the

property. The appellants, who held a comparatively small amount of the stock, refused their assent to every proposition, and while they were not required to give consent, they did not present a case which entitled them to relief in a court of equity.

The decree is affirmed.

*Decree affirmed.*