(No. 12571.—Judgment affirmed.)

GRANGER FARWELL, Plaintiff in Error, vs. THE PYLE-NATIONAL ELECTRIC HEADLIGHT COMPANY, Defendant in Error.

*Opinion filed June 18, 1919—Rehearing denied October 24, 1919.*

1. CORPORATIONS—*directors of corporation occupy position of trustees for stockholders.* The directors of a corporation are intrusted with the management of its business and property for the benefit of all the stockholders and occupy the position of trustees for the collective body of stockholders in respect to such business.

2. SAME—*directors cannot take advantage of their position for personal gain.* The rule in regard to the duty of directors, as trustees for the stockholders, reaches further than the transactions occurring directly between the directors and the corporation and embraces every relation in which there may by any possibility be a conflict between that duty and their own personal interests.

3. SAME—*when a director cannot buy corporate obligations at discount and enforce payment in full.* If it is for the interest of a corporation to buy its bonds or obligations at a discount and it is financially able to do so, a director will not be permitted, for speculation in his own interest, to buy the obligations at a discount and enforce payment in full against the corporation.

4. SAME—*when a director acquires an adverse interest by assignment of royalty contract.* Where inventors have entered into a contract with a manufacturing corporation for a monthly payment of five per cent of the gross receipts from sales of manufactured articles using their invention, a director who has purchased the interest of the inventors in the royalty contract acquires an interest adverse to that of the corporation, and in an action of account against the corporation he can enforce no equity for himself in such interest without showing that his act was for the benefit of the corporation.

5. SAME—*director seeking to enforce an adverse interest must prove consent of all stockholders.* A director of a manufacturing corporation who seeks to enforce, by an action of account against the corporation, an adverse interest which he has acquired by the purchase of the rights in a royalty contract, cannot take advantage of the doctrine that the violation of his fiduciary duty as trustee will be regarded in equity only so far as it is necessary to protect innocent and non-assenting stockholders, without showing who all the stockholders were and whether they consented to his action.

6. SAME—*knowledge of stockholders is necessary before laches can defeat their rights.* Stockholders have a right to rely upon the

fidelity of the directors to their trust, and they are not bound to know or exercise reasonable diligence to discover the facts which it is the duty of the directors to disclose by reason of the relation of trust and confidence arising out of their position.

7. SAME—*majority of directors or stockholders cannot ratify their own breach of trust by directors.* A violation of their duty by the directors of a corporation cannot be ratified by the action of those who were guilty of participation in the wrongful acts, even if they constitute a majority of the directors or stockholders.

8. SAME—*when court will not enforce equities against stockholders nor between directors.* Where a director who has acquired an interest adverse to the corporation brings an action of account against the corporation, it is no answer to a clear defense by the corporation that equities exist against certain of the stockholders who are not parties to the suit; and where other directors were also engaged with complainant in the breach of trust a court of equity will not ascertain their equities in a proceeding for the distribution of profits among them.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. MARTIN M. GRIDLEY, Judge, presiding.

JONES, ADDINGTON, AMES & SEIBOLD, (S. S. GREGORY, W. CLYDE JONES, KEENE H. ADDINGTON, ROBERT LEWIS AMES, MORRIS ST. P. THOMAS, and WALTER HAMILTON, of counsel,) for plaintiff in error.

BUTZ, VON AMMON & JOHNSTON, MILLER, GORHAM & WALES, PARKER & CARTER, and RECTOR, HIBBEN, DAVIS & MACAULEY, (FRANCIS LACKNER, EDWARD RECTOR, FRANCIS W. PARKER, FREDERIC E. VON AMMON, AMOS C. MILLER, and DONALD M. CARTER, of counsel,) for defendant in error.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

On a bill filed against the Pyle-National Electric Headlight Company in the superior court of Cook county by Granger Farwell, in his own behalf and as trustee, the court

rendered a decree for an accounting, from which the complainant, being dissatisfied with the basis fixed for taking the account, appealed to the Appellate Court for the First District. The defendant assigned cross-errors, which were sustained. The decree was reversed and the cause was remanded, with directions to dismiss the bill. Upon the petition of the complainant a writ of *certiorari* was awarded to bring up the record for review.

The Pyle-National Electric Headlight Company was incorporated in 1897 under the laws of New Jersey to manufacture and deal in electric headlights, and on February 9, 1897, George C. Pyle and Frank H. Ewers, who were the owners of four patents for steam turbines and three patents for electric lamps, of which Pyle was the inventor, entered into a written contract whereby they granted to the company an exclusive license to manufacture and sell patented articles and devices for all purposes for which such patented articles or devices, or parts thereof, could be utilized under the patents so assigned or any patents or improvements that might thereafter be made to accomplish the same or similar purposes. The consideration for this agreement was $500 cash, $4500 to be paid February 1, 1898, the issue to the owners of the patents of all capital stock of the corporation, of the par value of $700,000, except ten shares, and the agreement of the corporation to pay monthly a royalty of five per cent of the gross receipts derived from sales made under the license, such royalty to be not less than $150 for each calendar month from January 1, 1898. The president of the corporation was Royal C. Vilas and the secretary Perry Trumbull. The record does not show to whom the 6990 shares of the capital stock which the contract provided should be issued to Pyle and Ewers were transferred, but it appears that Vilas and members of his family have during the entire existence of the corporation owned a majority of the stock, though the number of shares so owned by them or by any of them is not

disclosed. Neither does the evidence show the names of the stockholders outside the Vilas family, or the number of their shares, except in a few instances. In January, 1898, an extension of a year on the $4500 payment was agreed on and evidenced in writing, the contract of February 9, 1897, being in all other respects confirmed. The company was then manufacturing and selling the headlights and paid royalties until March 1, 1898, but soon afterward began a suit in the superior court of Cook county charging that Pyle and Ewers had procured the agreement of February 9, 1897, by fraudulent representations or concealments. This suit was settled in October, 1898, the royalties due October 1, 1898, were paid and a written agreement was entered into for the dismissal of the suit at the complainant's costs, for a further extension of the $4500 payment to January 1, 1900, and for the extension of the time of payment of royalties accruing for the period from October 1, 1898, to the end of December, 1899, to January 1, 1900.

In the latter part of 1898 or beginning of 1899 Granger Farwell became a director of the Pyle-National Electric Headlight Company at the request of Royal C. Vilas, who gave Farwell ten shares of stock to qualify him for that position. Farwell afterward purchased more stock and continued to be a director until January, 1912, except for the period from February 7 to May 2, 1900, during which time no directors' meeting was held. On June 5, 1899, he obtained from Pyle and Ewers an assignment of their contract of February 9, 1897, with the Pyle-National Electric Headlight Company as well as of the legal title to the patents mentioned in that contract, and an agreement for the assignment of two other patents when issued upon applications then on file in the patent office,—one for a rotary engine governor and the other for an arc lamp,—of which patents the Pyle-National Electric Headlight Company would become the exclusive licensee by virtue of the agreement of February 9, 1897. These patents were subse-

quently issued and duly assigned to Farwell. The consideration of these assignments was $14,473.10, which Farwell paid. At the time of the assignment the payment of $4500, which had been extended to January 1, 1900, and the royalties accruing since October 1, 1898, the payment of which had been extended to the same date, were unpaid and they were afterward paid to Farwell. The purchase of the patents and all the contracts was made by Farwell for the joint benefit of Vilas and himself. Vilas soon after sold to Perry Trumbull one-third of his one-half interest. Vilas was president, Trumbull secretary, and Vilas, Trumbull and Farwell directors of the corporation, and the three were a majority of the board of directors. They continued to be such majority until February, 1901, when the number of directors was increased to seven, but at the same time Vilas and Farwell were appointed an executive committee, to which the board of directors delegated all its powers. Vilas died in 1904 and was succeeded as president by his brother, William Vilas, who died in 1908. Carrie A. Vilas, the widow of Royal C. Vilas, was then president until her death, in 1910, when her son, Royal C. Vilas, Jr., became president. He continued to hold that office when this suit was brought. After the assignment of the patents and contract to Farwell the $4500 payment and the deferred royalties, which were accumulating at the rate of more than $3000 a year, payment of which had been postponed to January 1, 1900, were paid to him, and the monthly payment of royalties under the contract continued to be made in increasing amounts until 1912, the total amount of royalties so paid exceeding $144,000. After the death of Vilas and Trumbull the monthly payments were made, one-half to Farwell, one-third of one-half to Trumbull's executor and two-thirds of one-half to Vilas' heirs.

On May 14, 1912, Farwell filed this bill for himself, the heirs of Vilas and the executor of Trumbull's will, alleging that the company had manufactured and sold large quan-

tities of the articles mentioned in the contract under the patents and by virtue of its license and had built up a large, lucrative and prosperous business, but that for large quantities of the articles so made and sold it had not paid the royalties provided in the agreement. The defendant filed an answer, which was afterward amended, admitting the execution of the agreements and assignments alleged in the bill; averring that it had for many years paid royalties on the basis of the total sales of the electric headlight equipments embodying the inventions covered by the patents, insisting that upon a proper construction of the agreement it was not liable to pay royalties on the basis claimed by the complainant; alleging that it had discontinued the use of all the inventions covered by the patents in the construction of its electric headlight equipments, and denying that any royalties were due under the terms of the contract.

After the cause had been referred to the master and the evidence taken, the defendant, at the hearing of exceptions to the master's report, obtained leave to file, and filed, an amendment to its amended answer, alleging that Farwell, Vilas and Trumbull were directors of the corporation at the various times which have been mentioned and stated their relation to the management of the corporation, stating that it would have been for the best interest of the corporation for Farwell to have bought the rights of Pyle and Ewers for the company at the price paid, which was much less than their real value, and that Farwell having obtained knowledge of their real value by reason of his position as a director, should have bought them for the company, which could have paid for them, but that Farwell did not consult the other stockholders and directors and disclose to them the opportunity of making such purchase but took and continued in a position antagonistic to the interest of the company; that he should be held to have acquired the rights purchased for the benefit of the company and not permitted to claim any rights under the purchase except the right

to be reimbursed for the money paid; that he had been so reimbursed; that the defendant was entitled to all the rights acquired by Farwell, and that the stockholders other than Vilas, Trumbull and Farwell at no time consented to or ratified the assignment.

Before the master, and on the hearing by the chancellor, many questions were considered involving the construction of the contract between the corporation and Pyle and Ewers, the effect of the conduct of the parties upon such construction, questions of patent law, the Statute of Limitations, and other questions. The chancellor found that under all the circumstances the corporation was not entitled to claim the benefit of the assignment to complainant of the contract and the patents for itself and that the complainant was not barred from a recovery because of his being a director in the corporation at the time he acquired such contract and patents. As to the other questions in controversy, the decree did not entirely sustain the contentions of either party but sustained some of the contentions of each. The Appellate Court made no decision on any of these latter questions, but being of the opinion that the relation of the complainant to the corporation was of such a fiduciary character as prohibited him from acquiring an adverse interest in the contract and patents, reversed the decree of the superior court for that reason and directed the dismissal of the bill.

At the end of 1899 the net assets of the corporation above all its liabilities amounted to more than $26,000, and its cash and accounts receivable from railroads were more than $40,000 and exceeded its debts nearly $10,000. In that year the company made a net profit of over $23,000, being more than three per cent on its capital stock of $700,000, which represented the value of its patent rights. The royalties paid in that year were over $3000, in 1900 over $4400, in 1901 over $5900. These payments and the deferred payment of $4500 more than reimbursed the com-

plainant for the money he advanced, and the payments of royalties continued regularly after 1901.

The directors of a corporation are intrusted with the management of its business and property for the benefit of all the stockholders and occupy the position of trustees for the collective body of stockholders in respect to such business. They are subject to the general rule which prevails in regard to trusts and trustees, that they cannot use the trust property, or their relation to it, for their own personal gain. It is their duty to administer the corporate affairs for the common benefit of all the stockholders and exercise their best care, skill and judgment in the management of the corporate business solely in the interest of the corporation. (3 Thompson on Corp. sec. 4009 *et seq.*) They cannot have or acquire any personal or pecuniary interest in conflict with their duty as such trustees. (*Hooker* v. *Midland Steel Co.* 215 Ill. 444.) The mere statement of the rule gains its approval. In *Nowak* v. *National Car Coupler Co.* 260 Ill. 260, the question of the disqualification of a director to purchase property of the corporation was considered, and, citing previous cases, it was said: "The general rule to be derived from the decisions is, that a director of a solvent corporation may trade with, borrow money from or loan money to the corporation or purchase its property, but in doing so he must act fairly and be free from all fraud and oppression and must impose no unfair or unreasonable terms. While a director is not disabled from purchasing the property of his corporation, the transaction will be subjected to the closest scrutiny by a court of equity, and if it was not conducted with the utmost fairness, to the end that the full value of the property should be obtained, the court will set it aside." There is here no purchase of property from or by the corporation or contract between the director and the corporation which is sought to be set aside, but the rule in regard to the duty of directors, as trustees for the stockholders, reaches further than

to transactions occurring directly between the directors and the corporation. In *Gilman, Clinton and Springfield Railroad Co.* v. *Kelly,* 77 Ill. 426, it was stated that the same rule applies to directors as to all persons acting in a fiduciary capacity, which requires the utmost fidelity to the interests of the *cestui que trust;* that it is a breach of duty for the directors to place themselves in a position where their own individual interests would prevent them from acting for the best interests of those they represent, and that the rule embraces every relation in which there may by any possibility arise a conflict between the duty to the person with whom the trustee is dealing or on whose account he is acting and his own individual interest. "The general rule stands upon our great moral obligation to refrain from placing ourselves in relations which ordinarily excite a conflict between self-interest and integrity. * * * In this conflict of interest the law wisely interposes. It acts, not on the possibility that in some cases the sense of that duty may prevail over the motives of self-interest, but it provides against the probability in many cases, and the danger in all cases, that the dictates of self-interest will exercise a predominant influence and supersede that of duty." (*Nichoud* v. *Gerod,* 4 How. 503.) It is conceded that a director may loan money to the corporation or purchase its bonds. It has not been decided in this State that he may purchase the corporation's outstanding obligations at a discount and enforce them in full, though it was intimated in *Higgins* v. *Lansingh,* 154 Ill. 301, that he may, if he act fairly and for the interest of the corporation. The intimation carries with it the corollary that he may not make such purchase for speculation in his own interest and enforce payment for the full amount against the corporation. If it is for the interest of the corporation to buy its bonds at a discount and it is financially able to do so, a director will not be permitted to buy those bonds at a discount and enforce payment in full against the corporation. In *Harts* v. *Brown,*

77 Ill. 226, where it was held that the directors of a corporation may trade with, borrow from or loan money to the corporation on the same terms and in like manner as other persons, may purchase the property and stock belonging to it in the same manner as though they were not directors, and may purchase its bonds and other indebtedness, it is still said that if the company had possessed money or property, or any assets that could have been converted into money, with which to redeem and discharge its debts, then the purchase of them would have been in bad faith. The contract of the corporation with Pyle and Ewers was not a liquidated demand against the corporation. It was an executory contract continuing during the life of the patents, calling not for the payment of certain sums of money at stated times, but for the payment, monthly, of five per cent of the gross receipts from sales made by virtue of the contract. The interest of Pyle and Ewers was necessarily adverse to that of the corporation, and under the principles which have been referred to, a director of a corporation could not acquire that interest for himself unless he could make it appear that his act was for the interest of the corporation. The conflict of the individual interest of Farwell with that of the corporation, which it was his duty as a director to protect, is illustrated by the fact that he is claiming in this suit that he is entitled to royalties on sales of whole electric headlight equipments and also on all sales of repairs and replacement parts, while the corporation contends that the royalties are payable only on the separate lamps, turbines and governors and not on the whole equipment and not on repair and replacement parts. Royalties had been paid on the whole equipments and not upon repair or replacement parts, and the court held that they should have been paid, not upon whole equipments but upon the patented articles and devices and upon repair or replacement parts. These are not the only differences of construction but are merely illustrative. In becoming the owner of the

contract with Pyle and Ewers, Farwell placed himself in a position where his individual interest was in conflict with his duty to the corporation of which he was a director. He had no right to buy the contract for his own profit but the corporation was entitled to the benefit of his bargain. It was solvent and there is nothing to indicate that it was unable to purchase the contract. Farwell has been re-paid many times over. The directors were bound to give the corporation the benefit of the royalties instead of taking it to themselves.

The record contains no evidence as to how many stockholders there were on June 5, 1899, or at any time since, who they were, whether they consented to the assignment to Farwell or had any knowledge of it, or from whom or how they obtained their stock. Therefore the argument of the plaintiff in error that a violation of his fiduciary duty by a trustee will only be regarded in equity so far as it is necessary to protect innocent and non-assenting stockholders is not applicable. The bill was filed by the plaintiff in error to enforce an accounting based upon an assignment which, upon the facts appearing in the record, it was a breach of his duty, as a director, for the plaintiff in error to obtain for himself. If all the stockholders assented to the assignment the corporation would not afterward be heard to oppose it, but it is not to be assumed, without evidence, that any stockholder assented. Royal C. Vilas did so and Trumbull, but the record is silent as to others. The burden of proof on this question is on plaintiff in error.

So far as the questions of ratification and *laches* are concerned, knowledge of the stockholders is necessary before their act or failure to act can bar their rights. They had a right to rely upon the fidelity of the directors to their trust, and were not bound to know or exercise reasonable diligence to discover the facts which it was the duty of the plaintiff in error and the directors associated with him to disclose by reason of the relation of trust and confidence

arising out of their position. (*Farwell* v. *Great Western Telegraph Co.* 161 Ill. 522; *Voorhees* v. *Campbell*, 275 id. 292.) The violation of their duty by the directors cannot be ratified by the action of those who were guilty of participation in the wrongful acts, even though they constituted a majority of the directors or of the stockholders. (*Klein* v. *Independent Brewing Ass'n*, 231 Ill. 594.) It was not to be expected that the corporation, so long as it was for the personal interest of the directors controlling a majority of the stock to keep the contract for royalties in force for their private benefit and to collect the royalties for their individual use, would seek to avail itself of its right to secure for itself the benefit of the assignment to the unfaithful trustee. The answer did not originally rely upon the breach of duty of the director as a defense though it denied that any royalties were due the complainant, but it was in the discretion of the court to permit the amendment of the answer on the hearing. This suit is against the corporation and is brought by the unfaithful director, who comes into equity to obtain the benefit of a contract which it is apparently a violation of his trust to enforce for his own benefit. The stockholders are not parties to the suit and are represented only by the corporation and their rights can be protected only through the corporation. If a decree should be rendered against the corporation it would have to be paid out of the funds of the corporation and the payment would fall proportionately on each stockholder. The complainant seeks to enforce a claim to which the corporation, on settled equitable principles, has a clear defense. It is no answer to this defense that equities exist against certain of the stockholders. If such equities do exist they cannot be enforced in a suit to which stockholders are not parties, and a court will not be astute to ascertain equities in the distribution of profits among directors jointly engaged in the breach of trust.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*