THE DIXMOOR GOLF CLUB, Inc., Appellee, *vs.* CHARLES EVANS, JR., *et al.*—(S. K. WHEELER *et al.* Appellants.)

*Opinion filed April 20, 1927.*

1. CORPORATIONS—*directors are trustees for the stockholders in conducting corporate affairs.*  The directors of a corporation are trustees of its business and property for the collective body of stockholders, and they are subject to the general rule in regard to trusts that they cannot, in their dealings with the business or property of the trust, use their relation to it for their own personal gain or place themselves in a position where personal interests conflict with corporate business, and they must use their best care, skill and judgment in the management of the corporate business for the common benefit of all the stockholders.

2. SAME—*director must act for benefit of corporation in selling property to it.*  While a director of a corporation is not disqualified from dealing with the corporation and buying its property or selling property to it, he is subject to the ordinary rule that an agent to sell cannot sell to himself and that an agent to buy cannot buy of himself, and in selling property to the corporation he must act fairly and be free from all fraud or unfair conduct, the transaction will be subjected to the closest scrutiny, and if not conducted with the utmost fairness, to the end that the corporation shall have received full value, it will be set aside.

3. SAME—*directors having option to purchase cannot sell to the corporation for their own benefit—accounting.*  Directors of a corporation who have a personal option to buy property at a certain figure, and who, exercising the option after being authorized to buy the property for the corporation, proceed to buy it from themselves for the corporation at a much higher figure, may be compelled to account for their profits in the transaction at the suit of the corporation; and the corporation is not required to rescind the transaction, as it is entitled to the benefit of the option.

4. SAME—*suit against directors for accounting may be in name of corporation.*  A suit in accounting to obtain relief against the wrongful dealing of the directors of a corporation in regard to its property is properly brought in the name of the corporation.

5. SAME—*when directors should be held jointly and severally liable.*  In a suit in equity by a corporation for an accounting by certain directors for wrongfully profiting at the expense of the corporation in their personal dealings with it, the directors should be held jointly and severally liable where there is evidence that the defendants conspired and acted together in obtaining their il-

legal profits in the transaction, as the liability is similar to that in trespass, where all are alike guilty and all severally liable for the damage sustained.

6. LACHES—*what is laches. Laches* is such neglect or omission to assert a right as, taken in conjunction with lapse of time and other circumstances causing prejudice to the opposite party, operates as a bar in a court of equity.

7. SAME—*general rule as to when laches will bar relief.* Equity applies the doctrine of *laches* in denial of relief prayed, where the statutory period of limitation has not expired, only where, from all the circumstances in evidence, to grant the relief to which the complainant would otherwise be entitled would presumptively be inequitable and unjust to the defendant because of the delay, and equity will be slow to apply the doctrine when there is no change in the situation of the parties to the prejudice of the defendant during the delay.

8. SAME—*when delay does not constitute laches.* Mere delay short of the statutory period of limitation will not be *laches* where there are no circumstances which place the defendant in a worse position because of the delay, as equity follows the law except when delay is accompanied by some other element causing injustice.

APPEAL from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding.

SLOTTOW & LEVITON, (CHARLES LEVITON, of counsel,) for appellants.

DENNIE J. O'TOOLE, (ALBERT G. KAISER, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Dixmoor Golf Club, Inc., brought suit to compel the defendants, Charles C. Upham and seven others, his associates, to account for secret profits made by them as organizers of the club while they were also its directors and in the management and absolute control of it, and for other relief. All the defendants filed a joint and several answer and a cross-bill. Three of them filed separate cross-bills. The complainant replied to the answer, demurred to the joint cross-bill and answered the others. The

cause was heard by the chancellor, and a decree was rendered sustaining the demurrer to the joint cross-bill and dismissing it, granting relief to the complainant in the original bill and referring the cause to the master for an accounting. S. K. Wheeler, Henry Weinberger and Alfred J. Kendrick, three of the defendants, have appealed from the decree.

The complainant's cause of action had its inception in a scheme originated by the defendant Upham to obtain an option for the purchase of a tract of land suitable for a golf course, to organize a golf club of which Upham and his associates should have the control, and to sell the land to the golf club at an advance over its cost. A tract of 123 acres having the desired qualities was found and Upham secured from its owners an option to buy it for $78,-000. The option was executed on November 22, 1921, though Upham had been negotiating with the owners for it three months before that time. The complainant corporation was organized under the laws of Illinois with an authorized capital stock of $300,000, divided into 3000 shares of $100 each, and its charter was issued on October 22, 1921, with Upham and all the defendants, except Wheeler, as its directors and its only directors. Wheeler became a director in June, 1922, Wells resigning as director. An application was made to the Secretary of State for a license to sell the securities of the club, which was granted on December 13 or 14, and immediately after subscriptions from the general public for the stock were received and the stock of the corporation was sold through C. C. Upham & Co., which was the name selected for its use by the syndicate conducting the enterprise. The option for the purchase of the land expired on February 22, 1922, but it was extended several times at Upham's request upon payment of $500. These payments were treated, in completing the transaction, as part of the first payment on the land. On April 22, 1922, the corporation entered into

a written agreement with Upham for the sale by him to the corporation, for $147,000, of the real estate, subject to a mortgage for $51,445, which Upham had given for so much of the purchase money. On the same day Upham closed the option and notified the owners of his intention to take and pay for the land. Subsequently he conveyed the land to the corporation subject to the mortgage. The syndicate was unable to get any brokers to undertake the sale of the stock for as little as twenty per cent commission, which was as much as under the license of the Secretary of State the corporation was authorized to pay, and therefore the corporation entered into an agreement with Upham & Co. to pay that commission for the sale of the stock. A prospectus was issued and the first sale of five shares was made December 15, 1921. Eighty-three shares of stock were sold up to June 13, 1922. A year later 2030 shares had been issued, 1000 shares being issued to Upham & Co. in part payment for the land. In the next year over 900 shares more were issued. The corporation paid to Upham & Co., as commissions for the sale of its capital stock, $58,700, which was twenty per cent on $293,500, and included the stock originally subscribed by the defendants and the shares of stock issued to themselves for the land. The complainant also paid to Upham & Co. $7295 as interest on the deferred payment of the purchase price of the land, though the contract says nothing about interest on such deferred payment. The complainant also paid Wheeler a salary of $300 a month and two expense accounts which the bill alleged to be unauthorized.

The decision of this case does not depend upon the doctrine of the rescission of contracts or the fiduciary relation of the promoters of a corporation to the corporation and its stockholders, but it does depend upon the fiduciary relation which the directors of a corporation hold to the corporation and to the stockholders. The law is well settled that a trustee cannot without a breach of the trust deal

with its subject matter in such a manner as to make a profit for his own benefit. It requires no very keen moral perception to recognize the obvious justice of this universal rule of law, of justice and of morality. The directors of a corporation are trustees of its business and property for the collective body of stockholders in respect to such business. They are subject to the general rule in regard to trusts and trustees, that they cannot, in their dealings with the business or property of the trust, use their relation to it for their own personal gain. It is their duty to administer the corporate affairs for the common benefit of all the stockholders and exercise their best care, skill and judgment in the management of the corporate business solely in the interest of the corporation. (*Farwell* v. *Pyle-National Electric Headlight Co.* 289 Ill. 157.) The stockholders are entitled to the utmost fidelity of the directors to the interest of the stockholders. It is a breach of duty for the directors to place themselves in a position where their personal interests would prevent them from acting for the best interests of those they represent. (*Gilman, Clinton and Springfield Railroad Co.* v. *Kelly,* 77 Ill. 426; *Hooker* v. *Midland Steel Co.* 215 id. 444.) A director of a corporation cannot become the purchaser of property of the corporation which it is his duty to sell. (*Chicago Hansom Cab Co.* v. *Yerkes,* 141 Ill. 320.) He is subject to the ordinary rule that an agent to sell cannot sell to himself, and an agent to buy cannot buy of himself. The interests of buyer and seller are inconsistent, and an agent cannot represent both interests at the same time. While a director is not disqualified from dealing with the corporation and buying its property or selling property to it, he must act fairly and be free from all fraud or unfair conduct, his transactions will be subjected to the closest scrutiny, and if not conducted with the utmost fairness, to the end that the corporation shall have received full value, they will be set aside. (*Nowak* v. *National Car Coupler*

*Co.* 260 Ill. 260.)   If he becomes a party to a contract with the corporation, his obligation to candor and fair dealing is increased in the precise degree that his representative character has given him power and control from the confidence reposed in him by the stockholders.   (*Beach* v. *Miller*, 130 Ill. 162.)   When the contract to purchase the land from Upham was made by the defendants they were the directors of the corporation and were governed by Upham. They had been selected for the purpose and with the intention of purchasing this particular property at a price two and a half times as much as was required by the option which Upham held on the property.   Each one of the directors was a participant in the proposed profits and nobody represented the adverse interests of the stockholders who did not participate but had subscribed for their stock at its par value, and who had a right to rely upon the directors to protect their interests and not to have any adverse interest in the business of the company.

The complainant does not seek a rescission of the contract.   It recognizes the contract and seeks to enforce it and have the benefit of it.   It was the interest of the appellee to buy the land for the lowest price; it was the interest of Upham and all the rest of the directors that the purchase should be at the highest price, and, as frequently happens in such cases, the trustees neglected the interest of the principal and took care of their own and made a bargain for the purchase of the property at the highest price. They could have bought the property from the owner for $78,000.   They did not own the property but they had an option on it at that price in which all who took part in the transaction on either side were equally interested, which was not exercised until the day the contract was made with the appellee.   Not until the sale to the corporation was secure did these trustees for the corporation bind themselves to pay to the owner of the property two-fifths of the purchase price which they, as trustees, had bound the appellee

to pay for the same property. In the making of this sale no one represented the purchaser except the members of the syndicate making the sale, which had been organized for the express purpose of selling the property at an advance of a hundred and fifty per cent over what it could be bought for, to the corporation which had been organized by the syndicate for the express purpose of purchasing the property at that advance.

The directors of the corporation were not only completely under the control of the syndicate, they were the syndicate. The syndicate did not, however, comprise all the stockholders. Stock had been issued to stockholders who had subscribed in good faith for their shares in ignorance of the facts in regard to the purchase of the property, and the duty of the directors of the corporation required that they should protect the interest of these stockholders and represent them faithfully and exclusively in the purchase, yet the original scheme was carried out and continued without any representation of the innocent stockholders until practically all the stock had been issued. This is a suit to obtain relief against the wrongful dealings of the directors of the corporation in regard to its property and is properly brought in the name of the corporation. (*Higgins* v. *Lansingh,* 154 Ill. 301.) The corporation was entitled to the benefit of the option and was not limited to a rescission of the contract. The joint cross-bill of the appellants was therefore properly dismissed, and the appellants were properly held to account for the $120,445 which they received from the sale of the land to the corporation.

The decree found, in accordance with the evidence, that the corporation paid to the syndicate $58,700 as commissions on the sale of the total amount of capital stock of the corporation issued, including the original subscribers' shares and the shares of stock purchased by the defendants with the funds derived from the syndicate; that the corporation also paid the syndicate $7295 as interest on the

deferred payment of the purchase price, which was an additional consideration for the real estate; that upon demand made by the corporation upon the appellants for an accounting and for the return of the capital stock of the corporation obtained by them as profits upon the sale of the real estate they returned 1000 shares, which have since been the property of the corporation, and that the return of the stock was not in settlement of all claims of the corporation against the defendants, and the corporation is not estopped by its receipt and retention of the stock from prosecuting its claims for further accounting. As to all these items the decree granted relief, requiring the defendants to re-pay the sum of $20,445, being the portion of the profit on the sale of the real estate not previously accounted for by the return of the 1000 shares of stock, to account severally for all moneys received by each from Upham & Co. as commissions on the sale of the stock or from the sum of $7295 paid Upham & Co. as interest on the deferred payment, and that the cause be referred to a master in chancery to state the account. The separate cross-bill of Wheeler was based upon an indebtedness of the corporation on three notes amounting to $3050 principal, besides interest, for money lent.

In regard to the commissions on the sale of stock, the appellants undertook the sale because it was impossible to find a broker who would undertake it within the limit of twenty per cent allowed by the Secretary of State for that purpose. The defendants were not authorized to charge compensation for their services in the sale of stock in the absence of formal action of the directors authorizing the sale and fixing their compensation, and they were not authorized to charge a commission on sales made to themselves in the payment of the profits accruing from the sale of the real estate. They were, however, so far as the amount of $58,700 included expenses actually incurred and paid out in good faith in the sale of stock, entitled to

credit for these amounts not in excess of twenty per cent of the amount of stock actually sold by them.

The appellants contend that the corporation ratified all the acts of the appellants, and that the $100,000 of stock which was returned to the treasury was accepted in full settlement of all liability of the appellants. A report of the financial condition of the corporation, its receipts and expenditures, with the source and purpose of them, was made to the stockholders at their annual meeting in December, 1923. This report showed the amount paid for the land, the payments made to Upham & Co. as commissions and the payments made to Wheeler as salary, and a news item in the *Chicago Tribune* was introduced in evidence showing the transfer from the owners to Upham of the land by a deed upon which appeared revenue stamps indicating a consideration of $78,000. The report, however, did not show that Upham & Co., who received the profits on the land transaction or the commissions, was composed of the appellants, and there is no presumption that the news item of the transfer from the owners to Upham was seen by the stockholders, and that they were thereby charged with notice of the real nature of the transaction.

In August, 1924, many of the stockholders were dissatisfied with the management of the corporation and its financial condition and a firm of accountants was employed by the corporation to audit the books. The audit was made and submitted at a special stockholders' meeting held on September 2, 1924. It disclosed the nature of the transactions which the directors had conducted themselves with Upham & Co. Other meetings were held, and at one of them, in September, a suggestion was made that Upham and his associates should return to the corporation, for resale, the stock which they had bought with the profits from the land. There was some discussion, and Wheeler asked if it would be fair to return $100,000 for that purpose. Floyd B. Moore, a stockholder present, said that would

help, and in lieu of anything else he would recommend it to the stockholders. Upham objected to the use of the word "return" but said he was willing to donate it. A few days later some of the dissatisfied stockholders were in Beach's office with some of the appellants when the matter was again discussed, and as a result of the discussion Beach prepared a letter dated September 20, addressed to Thomas J. Walsh, a stockholder who had been manager of the club, in the following language: "For the purpose of re-financing and perpetuating the Dixmoor Golf Club, Inc., as a golf club, its directors and majority stockholders assure you that as soon as it can be arranged there will be given by said majority stockholders into the treasury of the Dixmoor Golf Club, stock in said club of the par value of $100,000, to be used as treasury stock for sale or disposition, as the stockholders and officers may desire." This letter was signed by Beach, Upham, Wells and Wheeler, four of the directors. The directors all resigned, as shown by the records, on July 31, 1924, their resignations to become effective as soon as their successors should be elected. Their successors were elected on December 11, 1924. The stock was returned to the treasury and has not since been disposed of. No official action with reference to it appears either in the records of the stockholders or directors' meetings. The new directors assumed the management of the corporation and conducted it through the playing season of 1925, and it was not until October 9, 1925, that the bill in this case was filed.

The reasons assigned by the appellants in their testimony for the return of the stock were that the corporation was in financial difficulties and the stockholders were dissatisfied; that the stock was given to the club for the purpose of being re-sold and upon assurance by the objecting stockholders that it would be re-sold, and thereby the corporation would be relieved of its financial difficulties and the return of the $100,000 stock would settle all its claims

and there would be no further trouble. No formal action was taken by the corporation indicating that the stock was received in full satisfaction of the obligation of appellants to the corporation. The evidence does not lead to the conclusion that the return of the stock was received as a full settlement of all claims against the appellants. There was no formal ratification of the acts of the directors or release of their liability and no further action taken until the new officers had been in charge of the affairs of the club for nearly a year. The defense of *laches* is not applicable to this situation. The bill is merely a suit against delinquent directors, agents and trustees of the corporation for an accounting of their transaction of the business of the corporation and of its funds received by them. It does not seek to set aside any fraudulent conveyances or transactions. The basis of the suit is the breach of trust of the appellants as directors. There was no formal ratification of the acts complained of or release of the appellants from liability and no act recognizing or approving a settlement. A court of equity applies the doctrine of *laches* in denial of relief prayed, where the statutory period of limitation has not expired, only where, from all the circumstances in evidence, to grant the relief to which the complainant would otherwise be entitled would presumptively be inequitable and unjust because of the delay to the defendants. (*Stiger* v. *Bent,* 111 Ill. 328.) *Laches* is such a neglect or omission to assert a right as, taken in conjunction with lapse of time and other circumstances causing prejudice to the opposite party, operates as a bar in a court of equity. (*Morse* v. *Seibold,* 147 Ill. 318.) It will only be applied where, from all the circumstances, to grant the relief to which the complainant would otherwise be entitled would presumptively be inequitable and unjust because of the delay. (*Coryell* v. *Klehm,* 157 Ill. 462.) A court of equity will be slow to apply the doctrine when there is no change in the situation of the parties to the

prejudice of the defendant during the delay. (*Totten* v. *Totten*, 294 Ill. 70.) Mere delay short of the statutory period of limitation will not be *laches* where there are no circumstances which place the defendant in a worse position because of the delay. (*Gibbons* v. *Hoag*, 95 Ill. 45, *Lynn* v. *Worthington*, 266 id. 414.) Equity follows the law except when delay is accompanied by some other element rendering it inequitable. (*Stowell* v. *Lynch*, 269 Ill. 437.) The bill is practically a suit for the recovery of money had and received, and no circumstances of hardship appear which would make any delay short of the Statute of Limitations in such cases inequitable.

The corporation has assigned cross-errors on the failure of the court to decree that the appellee is entitled to recover, from Wheeler $124.26 received by him in payment of car-fare and commutation expenses, and $428.46 received in payment of gasoline, garage rent and repairs for automobile. The evidence shows that Wheeler was employed in overseeing and directing the work of construction on the grounds of the golf club, and the court found that he was employed by the corporation at the rate of $300 a month and at that rate earned the sum of $9300 which was paid him as salary, and was entitled to retain that amount. The court further found that Wheeler received $124.26 in payment of car-fare and commutation expenses and $428.46 in payment of gasoline, garage rent and repairs for automobile, that these sums were paid and expended by him for expenses entailed on account of the corporation and were properly charged to the corporation, and that he was entitled to retain them. These findings are supported by the evidence.

Cross-error is assigned on the failure of the court to find that the appellants were jointly and severally liable for the payment of $20,445, the balance of the profits realized by the defendants from the sale of the real estate, and for the money received by Upham & Co. as commissions

on the sale of capital stock, and for the sum of $7295, being interest on the deferred payments of the purchase price of the real estate. The acts of the defendants were joint acts, performed for the benefit of all. Their breach of trust was joint. Their distribution of the profits among themselves does not affect the liability to account. Where a liability arises from an intentional wrongful act of several parties conspiring together, each is liable for all resultant damage. A conspiracy by which several wrongfully obtain the money or property of another and misappropriate it is not to be distinguished, in the joint and several liability of each, from a trespass, in which all are alike guilty and all severally liable for the damage sustained. *People* v. *Small,* 319 Ill. 437.

The decree properly sustained the demurrer to the joint cross-bill of the defendants and dismissed the cross-bill and required the defendants to account for the remaining $20,445 of profits realized on the sale of the real estate and for the commissions received by Upham & Co. for the sale of capital stock, less the expenses in good faith incurred for the making of actual sales, and for the $7295 interest on deferred payments of the purchase price of the real estate, and properly allowed the appellant Wheeler credit for the sums of $124.26 and $428.46 expenses, and also properly found on his separate cross-bill that there was due to him the sum of $3050 principal, together with interest accruing according to the tenor of the notes set forth in his cross-bill, but it was error not to hold the defendants jointly liable, as well as severally, for the amounts with which they are charged.

The decree is therefore reversed and the cause remanded to the superior court, with directions to that court to modify the decree by holding the appellants jointly and severally liable in accordance with this opinion, and to re-enter the decree as so modified.

*Reversed and remanded, with directions.*