(No. 22096.—)

ARTHUR SEWELL, Appellant, *vs.* ARTHUR W. SEWELL *et al.*
Appellees.

*Opinion filed April 17, 1936.*

JONES, J., dissenting.

NEWBY, RATHBUN & BURDITT, (CHARLES F. RATHBUN, and GEORGE M. BURDITT, of counsel,) for appellant.

EDWARD H. MORRIS, JAMES B. CASHIN, MICHAEL J. AHERN, and WILLIAM H. HAYNES, for appellees.

Mr. JUSTICE SHAW delivered the opinion of the court:

Arthur Sewell, the appellant, filed his bill in the nature of a bill of review in the superior court of Cook county, seeking correction of alleged errors of law in a prior decree of that court. The original cause had been commenced by a bill filed by two of the present appellees, Arthur W. Sewell and John W. Sewell, minors, by their next friend, against the appellant as an individual and as guardian of the minors. The original bill alleged the marriage of appellant with Parthenia Berry on May 1, 1915, in Arkansas; that they lived together as husband and wife until Parthenia's death, and further alleged the birth of the minor appellees as the issue of that marriage. The bill further alleged that appellant had been appointed as guardian of the two minor appellees by the probate court of Cook county on May 8, 1923. This appears to have been an ancillary appointment, as there had been a prior appointment in Arkansas, as will be hereinafter noted. It further appears from the allegations of the bill sought to be reviewed that Nanny Berry, the mother of Parthenia, was the owner of 160 acres of land in Ouachita county, Arkansas, at the time of her death in 1910; that she died intestate, survived by Ab Berry, her husband, and by Parthenia and Fred Berry, her children; that Fred died in 1917, a bachelor, and was survived by his father, Ab Berry, and his sister Parthenia Berry Sewell, the wife of appellant and mother of the two minor appellees; that Par-

thenia died March 24, 1920, intestate, and was survived by her husband, the appellant, the two minor appellees and by her father, Ab Berry, and that Ab Berry died July 3, 1921, survived by the two minor appellees, his grandchildren, as his only heirs-at-law. It further appears from the allegations that on August 19, 1922, appellant was appointed and duly qualified as guardian for the minor appellees in the State of Arkansas by the probate court of Ouachita county.

It was further alleged that after appellant was so appointed guardian he executed an oil and gas lease upon the 160 acres in Arkansas, above mentioned, in which he appeared as lessor both individually and as guardian for the infant appellees. This lease was executed by the direction and with the authority of the probate court of Ouachita county, and was for a cash consideration of $58,500, in addition to certain royalties. The royalty agreement gave to the lessors seven-eighths of all the oil produced until the sum of $7000 had been paid, and thereafter the usual one-eighth royalty, which royalty is alleged to amount to about $6000 per month. It is alleged that on June 30, 1927, the minors' estate consisted mostly of personal property in Cook county, Illinois, then worth more than $300,000 and increasing in value. It was the prayer of the bill that the defendant (appellant) be decreed to have no interest in the royalty, or that his interest be ascertained and determined and an accounting had.

The original decree, a review of which is sought by the present bill, found that Nanny Berry (the mother of Parthenia) bought the land in Arkansas in 1904, and died seized thereof in 1910; that thereupon the fee of said lands descended to Parthenia and Fred Berry, subject to an estate by the curtesy in Ab Berry; that upon the death of Fred Berry, his father, Ab Berry, became the owner in fee of an undivided one-half of the property and remained a tenant for life by the curtesy in the other undivided one-half; that upon the death of Parthenia Berry Sewell the minors

became seized in fee of an undivided one-half of the land, subject to the life estate of Ab Berry. A decree was entered finding that appellant, the surviving husband of Parthenia, had no right, title or interest whatsoever in the land or in the rents and profits therefrom. This decree was entered March 24, 1930.

The bill, in the nature of a bill of review, which was filed in August, 1930, sets up all of the record in the foregoing cause and avers the decree to be erroneous, not only because of errors apparent upon its face, but because of fraud. It is alleged that the court erred in applying the laws of descent of the State of Arkansas, and that, had they been properly applied, the appellant would have been decreed to have an estate by the curtesy in the lands and in the rents and profits arising therefrom. The bill in the nature of a bill of review alleges that Nanny Berry had purchased the land in question on February 11, 1904, and with her husband Ab Berry had lived thereon and cultivated parts thereof; that she remained in such possession until she died leaving Parthenia and Fred, her children, and Ab Berry, her husband; that upon her death Ab Berry became entitled to an estate by the curtesy therein, the fee descending to Parthenia and Fred; that when Fred died in 1917, intestate and a bachelor, the undivided one-half of the land passed to Parthenia, who at that time had been married to appellant for two years. It further alleges that appellant and his wife Parthenia lived with Ab Berry on an adjoining 80-acre tract until shortly after the death of Fred, at which time, with one of their children who was then born, they moved onto the 160-acre tract which is in question here and, with the consent of Ab Berry, remained in the exclusive possession thereof until the death of Parthenia; that the appellant and Parthenia improved said 160-acre tract by constructing a home thereon, and continuously tilled the same; that after Parthenia's death, appellant, claiming an estate by the curtesy, continued in

such possession until 1920, when he placed a renter in possession; that during all of said time the full use and possession of said lands were exclusively in Parthenia until her death, and in the appellant and his tenant thereafter; that appellant has continuously claimed and exercised his estate by the curtesy, and that from the time of Parthenia's entering into possession of the 160-acre tract her father, Ab Berry, until his death, lived upon an adjoining 80-acre tract, openly consenting to the use of said lands by Parthenia and the appellant, and never claiming or asserting any right to any rents, issues or profits arising therefrom. The bill contains further allegations concerning an alleged fraud perpetrated upon appellant in the filing of the original bill and the procuring of the original decree, but it will be unnecessary for us to consider these matters in view of the conclusions we have arrived at, as hereinafter set forth. The bill in the nature of a bill of review was, upon final hearing, dismissed for want of equity, and the cause comes to this court upon an appeal from that decree.

A freehold is so put in issue by the pleadings that a decision of this case necessarily involves a decision of that issue, and the appeal is properly taken to this court. *Sanford* v. *Kane,* 127 Ill. 591.

Objection is taken to the exercise of this court's jurisdiction because of the land in question being located in Arkansas. The superior court had jurisdiction of the parties, and under the reasoning of this court in *Nowak* v. *National Car Coupler Co.* 260 Ill. 260, the fact that the real estate is located in another State did not deprive the superior court, nor does it deprive this court, of jurisdiction.

Since this litigation has been pending in Illinois, litigation has been carried on in Arkansas involving the title to the real estate in question and the determination of the questions whether appellant has an estate by the curtesy in the 160 acres involved, whether the minor appellees have a homestead estate therein, and involving the parity or pri-

ority of these estates. This litigation was carried to the supreme court of Arkansas and as to most of the questions here involved was finally determined by that court. (*O'Connell* v. *Sewell,* 87 S. W. (Ark.) 985.) The Arkansas court decided that the appellant is entitled to an estate by the curtesy in the entire tract, and that the minor appellees have a homestead estate in the same property; that at the time the homestead estate vested, the entire tract was not worth more than $480, and that therefore the homestead extended over the entire quarter-section. It was also held that the estate of homestead is paramount to the estate by the curtesy, the latter yielding to it during the minority of the infants. Observing the usual rule, and giving full force to the *lex loci rei sitæ* it is apparent that the decree of the superior court of Cook county, which this bill of review questions, was erroneous on its face as a matter of law; that it did not properly find nor adjudge the rights of the parties, and that it should be reviewed and corrected.

A life tenant, or the owner of any other temporary estate less than a fee, has no right to open new oil wells where none had been opened or authorized before the commencement of his estate. This is the rule applied by this Court, (*Ohio Oil Co.* v. *Daughetee,* 240 Ill. 361, and *Prout* v. *Hoy Oil Co.* 263 id. 54,) and so far as we know is of universal application. (See annotation, 43 A. L. R. 811.) In the *Ohio Oil Co. case, supra,* we held that for a life tenant to operate for oil would constitute waste which a court of equity would enjoin, and that a tenant for life has no such right. The supreme court of Arkansas holds to the general rule as above stated. (*Cherokee Construction Co.* v. *Harris,* 92 Ark. 260, 122 S. W. 485.) In that case the Arkansas court said that the homestead law of Arkansas does not create any estate greater than the right of occupancy and the right of enjoying the rents and profits therefrom during the life of the widow or minority of the chil-

dren, as affecting the rights of heirs; that the homestead estate in Arkansas is one for life or for years, purely the creation of statute, and with no extra-territorial effect. In that case it was held that a tenant for life, or for years, could do nothing to impair or injure the estate of the remainder man or reversioner, or it would be waste, and that it would be waste to open new mines, although not to continue to work them if already opened. In the opinion the court said: "It follows that the life tenant has the right to use and enjoy the premises as he may see fit, provided he commits no injury to the inheritance. He takes the land in the condition in which it was when the estate vested in him, and he is entitled to all the rents and profits that then issued therefrom, and to continue to use and enjoy them to the same extent until the termination of the estate. But such tenant by an original act of his own is not entitled to obtain from the land any profit that would result in an injury to the inheritance. And the widow and minor children do not obtain by the homestead law any greater right in the use and enjoyment of the homestead than this. They have not the right in their use of the homestead to commit waste, and cannot during their occupancy do or permit any act to be done that will prove an injury to the estate of the reversioner."

Under the general rule which, as we have seen, has been approved both in Arkansas and Illinois, we must presume that when the probate court in Arkansas approved the lease of these oil lands on behalf of the infant appellees it did so for the benefit of the entire estate, and anticipating that the oil produced, as well as the preliminary bonus for the lease, would be considered a part of the land, the same above ground as it had been below. Similar situations have been so treated by many courts, and we believe this to be the just rule. Thus in *Blakley* v. *Marshall*, 174 Pa. 425, 34 Atl. 564, 18 Mor. Min. Rep. 350, certain life tenants for themselves and as trustees for their

children, who were remainder men, with the approval of a court, executed a lease under which oil and gas were produced. It was held that the resulting moneys should be invested, the interest thereon to be paid to the life tenants during their life-times, with the corpus to the children. The same rule was adhered to in *Wilson* v. *Youst,* 43 W. Va. 826, 28 S. E. 781, and in *Stewart* v. *Tennant,* 52 id. 559, 44 S. E. 223.

For the reasons which we have indicated we hold that all the funds which have arisen from the oil and gas lease in question shall be considered as a corpus, the fee of which is in the infant appellees; that the decision of the supreme court of Arkansas is, as a matter of comity, controlling as to the estate of homestead and estate by the curtesy; that as held by that court the appellant, Arthur Sewell, has an estate by the curtesy in the entire tract, but that such estate is subject to a paramount estate of homestead in the infant appellees during their minority. Proper administration will require that a trust fund be established so that the income therefrom shall be applied for the use and benefit of the minors during the existence of the homestead estate, thereafter for the use and benefit of the appellant during the continuance of his estate by the curtesy, and the corpus to be paid over to the owners of the fee upon the expiration of the two superimposed estates.

The decree of the superior court of Cook county will be reversed, and the cause remanded to that court for further proceedings in harmony with this opinion.

*Reversed and remanded, with directions.*

Mr. Justice Jones, dissenting.